## Commonwealth of Virginia

### v.

## General Electric Company

Record No. 850577

September 23, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell and Whiting, JJ., and Cochran, Retired Justice

56

*Barbara M. Rose, Assistant Attorney General (Mary Sue Terry, Attorney General; Kenneth W. Thorson, Assistant Attorney General*, on briefs), for appellant.

*William L. S. Rowe (T. S. Ellis, III; Thomas McN. Millhiser; Hunton & Williams*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

This corporate income tax appeal stems from action of the State Department of Taxation in combining the income of two corporations, a parent and its wholly owned subsidiary, and in adjusting the Virginia tax on this income to reflect business actually done in Virginia. The parent-taxpayer contends that the Department erroneously included within its apportionable income for the years in question the income of the wholly owned subsidiary. Entwined in the controversy is the 1971 General Assembly's decision to conform Virginia income tax laws to the federal income tax laws for the purpose of tax simplification, as well as 1971 federal tax law changes aimed at stimulating export sales of American products.

The decision turns on the interpretation of one sentence in Code § 58-151.083 (Repl. Vol. 1974), now Code § 58.1-446 (Repl. Vol.

1984), a part of the State Tax Code. The statute addresses price manipulation and intercorporate transactions. It provides as follows, with the provision at issue italicized:

"When any corporation liable to taxation under this chapter by agreement or otherwise conducts the business of such corporation in such manner as either directly or indirectly to benefit the members or stockholders of the corporation, or any of them, or any person or persons directly or indirectly interested in such business, by either buying or selling its products or the goods or commodities in which it deals at more or less than a fair price which might be obtained therefor, or when such a corporation sells its products, goods or commodities to another corporation or acquires and disposes of the products, goods or commodities of another corporation in such manner as to create a loss or improper taxable income, and such other corporation by stock ownership, agreement or otherwise controls or is controlled by the corporation liable to taxation under this chapter, the Department of Taxation may require such facts as it deems necessary for the proper computation provided by this chapter and may for the purpose determine the amount which shall be deemed to be the Virginia taxable income of the business of such corporation for the taxable year. In determining such income, the Department shall have regard to the fair profits which, but for any agreement, arrangement or understanding, might be, or could have been, obtained from dealing in such products, goods or commodities.

Any corporation liable to taxation under this chapter and either owned or controlled by or owning or controlling, either directly or indirectly, another corporation may be required by the Department of Taxation to make a report consolidated with such other corporation showing the combined gross and net income and such other information as the Department of Taxation may require, but excluding intercorporate stockholdings and the intercorporate accounts. *In case it shall appear to the Department of Taxation that any arrangements exist in such a manner as improperly to reflect the business done or the Virginia taxable income earned from business done in this State, the Department of Taxation may, in such manner as it may determine, equitably ad-*

*just the tax.* In all cases mentioned in this paragraph such other corporations, not otherwise liable to taxation under this chapter, shall, for the purposes of this chapter, be deemed to be doing business in Virginia through the agency of the corporation liable to taxation under this chapter."

In 1978, appellee General Electric Company, the taxpayer, filed this proceeding against the Commonwealth seeking correction of an allegedly erroneous assessment of corporate income taxes for the years 1973, 1974, and 1975. Following discovery, the parties filed a stipulation of facts in 1980. A bench trial was held in 1981. Based on the evidence presented, the trial court made certain findings of fact and conclusions of law and ruled against the Commonwealth. The court ordered the Department of Taxation to refund to the taxpayer taxes and previously assessed interest totalling $654,701.96. We awarded the Commonwealth this appeal from the April 1985 order.

The basic facts are without substantial conflict. General Electric Company is a New York corporation doing business in Virginia and in every other state in the United States. Its principal place of business is in Schenectady, New York. General Electric is subject to Virginia income taxation and filed Virginia income tax returns for each of the years at issue in this case. General Electric does not file a consolidated Virginia return with its subsidiaries.

General Electric International Sales Company (GE DISC) is a Delaware corporation having its principal place of business in Schenectady. It is a wholly owned subsidiary of General Electric. It does not engage in business in Virginia, is not qualified to do business in Virginia, and has no assets, property, employees or offices in Virginia. GE DISC is not subject to income taxation by Virginia. It did not file Virginia income tax returns for the years in question and was not required by law to do so.

GE DISC was organized in 1971 for the purpose of qualifying as a Domestic International Sales Corporation (DISC) within the meaning of the Internal Revenue Code of 1954. *See* I.R.C. §§ 991-997. All its activities, including its dealings with General Electric, are conducted in accordance with federal law and are proper and permitted for federal tax purposes. The purpose of the federal DISC legislation, enacted in 1971, was to stimulate this country's export activity by providing corporations with the opportunity to defer a portion of export income.

General Electric sells manufactured products into foreign commerce and, as permitted by federal tax laws, pays a commission to GE DISC on such sales. GE DISC employs no sales force and does not engage in any sales efforts in connection with the sales of General Electric products in foreign commerce. The sole income of GE DISC consists of the commissions on qualified export sales of General Electric products and interest income from investments in qualified export assets.

GE DISC is exempt from federal income taxation, but one-half of its income is treated as a dividend for federal income tax purposes, whether or not distributed, and is taxed to General Electric. This is known as a "deemed dividend." The half of GE DISC's income not treated as a deemed dividend is exempt from federal income taxation for only so long as it is held by GE DISC. This second half is deferred and will become subject to tax at such time as it is distributed to General Electric or another taxing event occurs.

In 1971, a special session of the General Assembly adopted income tax conformity. Acts 1971, ch. 171. Both Virginia's conformity legislation and the federal DISC statutes became effective for taxable years beginning on and after January 1, 1972.

Conformity was adopted after the subject had been considered by two legislative study commissions, in 1967 and 1971, and following an amendment to the Constitution of Virginia approved in a November 1970 referendum. The amendment expressly permits incorporation by reference of federal income, gift, and estate tax laws. It provides that "any law by which taxes are imposed may define or specify the subject and provisions of such tax by reference to any provision of the laws of the United States as those laws may be or become effective at any time or from time to time, and may prescribe exceptions or modifications to any such provision." Va. Const. art. IV, § 11.

Contemporaneous with the adoption of conformity, the Department of Taxation published two policy declarations on the subject. First, on December 31, 1971, the Department published Corporate Income Tax Circular No. 2 titled "Consolidated Returns" and specifically referred to the statutory provision at issue in this case as follows:

"The second paragraph of Virginia Code § 58-140 (§ 58-151.083 after December 31, 1971) permits the Department

of Taxation to require the combination of the accounts of a corporation with those of another controlled or controlling corporation, which need not be subject to the Virginia income tax. Adjustments shall be made for intercompany transactions. The income so determined will be allocated and apportioned to determine Virginia income. If two or more corporations subject to the Virginia income tax are included in the same combination, the combined Virginia taxable income will be apportioned among them in an equitable manner. No tax will be assessed against the income of a corporation having no nexus in the Commonwealth, but the income of such a corporation will be considered in determining whether the corporate structure of a unitary business constitutes an arrangement existing in such a manner as improperly to reflect the business done or the entire net income from business done in the Commonwealth. It is not necessary for this purpose that there be price manipulations or other improprieties in the conduct of the corporation's business. If the Department of Taxation shall determine that the combined Virginia taxable income so ascertained properly reflects the Virginia income of a unitary business, it may assess a corporation subject to the Virginia income tax on the basis of such income."

Second, on February 16, 1972, the Department published Corporate Income Tax Circular No. 3, referring only to DISCs with headquarters in Virginia. The circular noted that under recent amendments to the Internal Revenue Code, a DISC had been made exempt from federal income tax but that Virginia "does not provide a similar exemption." The Department stated, "It is therefore necessary for a DISC subject to the Virginia income tax to compute its federal taxable income even though no federal tax is extended thereon."

For the years 1972-76, General Electric filed Virginia income tax returns and paid Virginia income tax. GE DISC was treated as a separate corporation and its income was not reported with that of General Electric. The Department audited the taxpayer's 1972 return and made no adjustment with regard to the reporting method.

In November 1977, following an audit, the Department, relying mainly on the statutory provision in issue, assessed the taxpayer

with additional Virginia income taxes for the taxable years 1973, 1974, and 1975. Prior to the tax year 1972, and before federal DISC legislation and the incorporation of GE DISC, the income which was later earned by GE DISC in the form of commissions had been part of General Electric's federal taxable income, thereby making its Virginia taxable income subject to allocation and apportionment. In assessing additional Virginia taxes, the Department took the position that, were it not for the provisions of the statute in question, General Electric would be able to minimize its Virginia taxable income subject to apportionment. This could be accomplished by shifting as much of its income from export sales of goods manufactured in Virginia and the United States into the "paper corporation GE DISC" as it is legally permitted to do under the federal DISC laws through an arrangement between the parent-taxpayer and its wholly owned subsidiary.

As previously noted, GE DISC is exempt from federal taxation, but one-half of its income is treated as a deemed dividend for federal income tax purposes, whether or not distributed, and is taxed federally to General Electric as dividend income from a wholly owned subsidiary. According to the Department, taxation of the remaining one-half of the commission income as a dividend to General Electric is deferred indefinitely for federal income tax purposes.

The Department required all dividends received by a corporation having its principal place of business outside Virginia, including investments in a subsidiary corporation, to be allocated to the recipient corporation's principal place of business, in this case New York. See former Code § 58-151.040 (Repl. Vol. 1974) (repealed effective January 1, 1981. Acts 1981, ch. 402 at 542). Thus, dividends paid to General Electric by its subsidiaries including GE DISC were not taxed in Virginia. General Electric's taxable income from business done in Virginia which was paid subsequently to GE DISC as a commission on foreign sales escaped Virginia taxation because it was returned to General Electric in the altered form of dividends not subject to Virginia corporate income tax.

In connection with the audit, the Department required General Electric to include in its Virginia taxable income the commission income of GE DISC. In effect, this consolidated reporting requirement established General Electric's Virginia taxable income as if

no commission had been paid to GE DISC. The amount paid by GE DISC to General Electric in the form of a deemed dividend then was deducted from General Electric's Virginia taxable income to avoid double taxation.

In March 1978, the taxpayer's administrative protest of the assessments was denied. In May 1978, Tax Circular No. 2 was revised and provided that: "Notwithstanding any other regulation, the requirements of Section 58-151.083 will be applied to Domestic International Sales Corporations (DISCs)." In December 1978, the taxpayer filed the present application for correction of erroneous assessments.

In granting the taxpayer's application, the trial court determined that Virginia's income tax system conforms to the federal "except for specific instances of non-conformity expressly provided by statute." The court further noted that this system of "absolute conformity subject to specified instances of non-conformity enacted by the General Assembly reflects precisely the General Assembly's purpose," citing the 1971 legislative report. Giving little weight to the Department's policy announced in the tax circulars, the court ruled that the statute in issue merely was general in nature and was "not the express non-conforming legislation that must exist to provide authority for [the] assessments in this case." Further, the court decided that the statutory provision in question, particularly the phrase "improperly to reflect," contemplates an illegal or improper arrangement or transaction as a condition to its operation, a situation not present here. Thus, the court determined that the assessments, "to the extent based on requiring General Electric to pay tax on its Virginia taxable income and the taxable income of GE DISC, a corporation not subject to Virginia taxation, are erroneous and invalid."

On appeal, the Department, through the Attorney General, argues that the trial court erred. It contends that "the principles of conformity mandate a current recapture of Virginia taxable income earned from business done in this State." Acknowledging that the State Tax Commissioner "has no independent authority to subject GE DISC to tax in Virginia were it not for the fact that General Electric is subject to Virginia income tax," the Department asserts that the assessments attacked are assessments against General Electric for income it has earned. The Department contends that the General Electric income in question is attributable to GE DISC pursuant to federal tax laws "through an

arrangement which permits General Electric to engage in business dealings with its wholly-owned subsidiary GE DISC, a paper corporation, at less than an arm's length business standard." The Department says that because GE DISC is a wholly owned subsidiary of General Electric and because General Electric is subject to tax in Virginia, GE DISC expressly is deemed to be doing business in Virginia, according to the last sentence of the statute under scrutiny ("In all cases mentioned in this paragraph such other corporations, not otherwise liable to taxation under this chapter, shall, for the purposes of this chapter, be deemed to be doing business in Virginia through the agency of the corporation liable to taxation under this chapter").

The Department takes the position that conformity is not "absolute," otherwise there would be no role for the many state statutory provisions, including the statute at issue, which apply from a starting point of federal taxable income. The Department states that when the objective of tax simplification impinges upon the equally important objective of preservation of tax revenue, the Department is required by conformity "to use the statutory tools given to it by the General Assembly to restore the balance and prevent the compromise of tax revenues rightfully claimed against income from business done in Virginia." The Department maintains that it acted with express statutory authority and that its position is supported by the preexisting 1971 Tax Circular No. 2.

The taxpayer, asserting the trial court did not err, argues that "Conformity" and *Commonwealth* v. *Champion Int'l Corp.*, 220 Va. 981, 265 S.E.2d 720 (1980), "control this case." In *Champion*, we held that the State Tax Commissioner's administrative construction of a tax statute was not entitled to great weight because the regulations embodying the construction were not published until after the tax years in question. The taxpayer contends that "Conformity is the lifeblood of the Virginia income tax and a legislative command." The taxpayer asserts that no specific legislative authority exists which permits the Department to consolidate the income of GE DISC with that of General Electric. According to the taxpayer, the result of the Department's improper requirement of consolidation is that General Electric's Virginia taxable income "is very different from its federal taxable income," and this violates conformity.

The taxpayer states that exceptions to conformity "must be specific and statutory." It notes that Code §§ 58-151.013 and

-151.032, now §§ 58.1-322 and -402, list specific instances of non-conformity but that, "None relates to DISCs; nor can § 58-151.083 qualify." The taxpayer points out that the statute in question makes no reference to DISCs; it was enacted in 1928 and long before the federal DISC provisions; and by its own terms "requires the existence of an impropriety." The taxpayer says, "No impropriety is present here because GE DISC and General Electric complied with the [federal] DISC provisions." In addition, the taxpayer argues, "if the federal taxable income is lawful and proper, so is the corresponding Virginia taxable income." The taxpayer says, "If the Department wishes to make an exception to Conformity in the case of DISCs, it must seek specific authority from the General Assembly and not from the courts." We disagree with the taxpayer's contentions and agree with the Attorney General.

Certain basic principles should be reviewed. The power of taxation is exercised by the legislature, "and an executive officer who seeks to enforce a tax must always be able to put his finger upon the statute which confers such authority." *Commonwealth* v. *P. Lorillard Co.*, 129 Va. 74, 82, 105 S.E. 683, 685 (1921). Statutes imposing taxes must be construed most strongly against the Commonwealth and in favor of the taxpayer. Such enactments should not be extended by implication beyond the clear import of the language used. *Commonwealth Natural Resources, Inc.* v. *Commonwealth*, 219 Va. 529, 537, 248 S.E.2d 791, 796 (1978). And construction of a statute by a State official charged with its administration is entitled to great weight. *Winchester TV Cable Co.* v. *State Tax Commissioner*, 216 Va. 286, 290, 217 S.E.2d 885, 889 (1975). But when a tax statute is subject to administrative interpretation, the Department may not rely upon administrative policy that is not published in a manner to give the public knowledge of the administrative construction. *Champion*, 220 Va. at 994, 265 S.E.2d at 726.

Against the background of these settled rules, we hold that the Department of Taxation, given the arrangement between General Electric and GE DISC, acted with the express statutory authority of Code § 58-151.083 in requiring consolidated tax reporting and in adjusting the taxes in question. Moreover, a preexisting administrative interpretation supported the Department's action.

The history of the statute in question, including the pertinent sentence, is instructive on the issue of legislative intent. The

second paragraph was added to the Tax Code in 1928. Acts 1928, ch. 45 at 60-61. When the General Assembly adopted conformity in 1971, that paragraph was reenacted in its entirety as § 58-76.84. Acts 1971, ch. 171 at 365. We construe this action to be an affirmative decision by the General Assembly, made at the time it embraced conformity, to provide specifically for a deviation from conformity when, as here, intercorporate relationships exist in such a manner as improperly to reflect the business done or the Virginia taxable income earned from business done in the Commonwealth. In essence, and contrary to the taxpayer's argument, the statutory provision in question is specific, not general. In other words, the provision under scrutiny is one of the "exceptions or modifications" contemplated by the constitutional amendment permitting conformity legislation. Thus, taxation of GE DISC does not violate conformity, a concept upon which the taxpayer places exaggerated emphasis.

Alternatively, the taxpayer contends that Code § 58-151.083 is not applicable to DISCs under the express wording of the statute. It says that the second paragraph applies only if arrangements exist between, for example, General Electric and GE DISC "as improperly to reflect . . . the Virginia taxable income" of General Electric. According to the taxpayer, the use of "improperly" connotes "moral culpability, impropriety, or wrongdoing." We disagree. The taxpayer has adopted a meaning of "improperly" which is wholly at odds with the plain meaning of the word when taken in the context of the whole statute in general and the sentence at issue in particular.

▇ The adverb "improperly" modifies the infinitive "to reflect" and, as the Attorney General points out, makes no semblance of an antecedent reference to the word "arrangement." In the sense used in the provision, "improperly" does not suggest fraud or wrongdoing. Indeed, the first paragraph of the statute deals with price manipulation and alludes to illegal conduct existing between two or more related corporations. Rather, the term as used in this context means "not accordant with fact," or "inaccurate" or "incorrect." *See* Webster's Third New International Dictionary 1137 (1971). As articulated in the 1971 Tax Circular No. 2, the second paragraph of the statute does not refer to wrongful conduct.

▇ To support its definition of "improperly," the taxpayer cites *Kohlberg* v. *Virginia Real Estate Comm'n*, 212 Va. 237, 183 S.E.2d 170 (1971), a case readily distinguishable on its facts.

There, the statutory term "improper . . . dealing" was coupled with terms "fraudulent" and "dishonest" dealing. In the context used in *Kohlberg*, unlike this case, "improper" connoted moral culpability. 212 Va. at 238-39, 183 S.E.2d at 171.

Finally, the taxpayer, in support of its contention that *Commonwealth* v. *Champion Int'l Corp., supra*, controls this case, argues that the Department's policy to consolidate a DISC with its parent corporation was developed and published after the tax years involved in this case. The taxpayer notes that we said in *Champion* that the Department "may not rely upon administrative policy not promulgated to the public." 220 Va. at 992, 265 S.E.2d at 726. See Code § 58.1-205 dealing with administrative interpretations which shall be accorded no weight. Thus, the argument goes, the Department may not rely on its policy to apply the statute in question to DISCs because the policy was developed "after the fact in contemplation of this and similar litigation."

In an understandable effort to deflect the force of the 1971 version of Tax Circular No. 2, the taxpayer refers to the evidence. First, the taxpayer notes that the Department failed to challenge the reporting method during audit of the 1972 return in which the DISC income was not reported with that of General Electric. This indicates, the taxpayer argues, that the Department had no fixed policy in 1972 to consolidate the income of General Electric and GE DISC despite the statements in the 1971 Circular. Moreover, the taxpayer argues, testimony from a State tax official indicated that the "policy" was not developed even orally until 1976 or in writing until the May 1978 revision of Tax Circular No. 2.

Also, referring to the language of the 1971 Circular, the taxpayer says the Department relies for its authority to consolidate income "not on a showing of impropriety but a showing that the two corporations are engaged in a 'unitary business.'" The taxpayer says the Department has repudiated the unitary business theory because it is at odds with Virginia statutes and does not reflect accurately Virginia's tax policy. Accordingly, the taxpayer contends, the Department cannot rely on an administrative interpretation based on a rejected theory.

The unitary business argument is answered by further reference to the evidence. In the stipulation, the parties recognized Virginia's policy of encouraging the location in Virginia of foreign corporations and businesses. The parties agreed that, in furtherance of that policy, Virginia acknowledges that affiliated corpora-

tions are separate and distinct entities not required to file a consolidated Virginia income tax return, even if engaged in a unitary business, unless each of the consolidating corporations is subject to Virginia income tax. The stipulation also provided, however, that Virginia does not require affiliated corporations, even if engaged in a unitary business, to combine their incomes on a nationwide or worldwide basis "except as provided in Virginia Code § 58-151.083." Thus, the taxpayer has agreed the statute in question is an exception to the general rule that Virginia will not apply the unitary business test to affiliated corporations. Consequently, the Circular, dealing only with § 58-151.083, of necessity and properly referred to the unitary business test. Such reference does not diminish the Circular's credibility.

The argument that the Department retroactively applied a "new" policy in making the assessments at issue, an argument consistent with the trial court's finding of fact, is wholly without sufficient evidence to support it. It is true the evidence shows that the Department had not elected prior to 1976 to apply Tax Circular No. 2 to parents and DISCs, and that this policy was not published in writing until 1978 when Circular No. 2 was revised. Nevertheless, the fact remains that at all pertinent times General Electric was a corporation controlling its wholly owned subsidiary, GE DISC, facts which the taxpayer cannot, and does not, deny. Thus, the policy announced in the 1971 Circular manifestly applied by its very language to General Electric and its DISC. The action of the Department in conducting the audit on which the assessments were based and the 1978 revision of the Circular merely was conduct by the Department consistent with a fixed policy first announced in 1971. In essence, the taxpayer advances the untenable idea that a published statement of administrative policy must anticipate every conceivable set of circumstances to which the basic interpretation may possibly apply, otherwise it is of no effect. Accordingly, the rule of *Champion* does not operate in favor of the taxpayer and we will accord the administrative interpretation of the statute in question the great weight to which it is entitled under our decisions.

In conclusion, we reject a constitutional argument advanced by the taxpayer. Citing *City of Waynesboro* v. *Keiser*, 213 Va. 229, 191 S.E.2d 196 (1972), it contends that unless the term "improperly" is limited by construing it to mean "wrongful," the statute becomes unconstitutionally vague. This is because, the tax-

payer says, the Department is given the authority to require a parent to file a consolidated return showing its income and that of its subsidiary, and then it may "equitably adjust the tax." This enables the Department to require a consolidation of income "whenever doing so produces the desirable and equitable ends of greater tax revenues," according to the taxpayer.

In *Keiser*, the portion of Virginia's local tax refund procedures permitting a circuit court judge to make a refund "if the court in its discretion finds the ends of justice would be met" was declared unconstitutionally vague. 213 Va. at 234, 191 S.E.2d at 199. Unlike the statutory language in *Keiser*, which provided "no guidelines or standards for decision," *id.*, the language in the present statute does not suffer from such an infirmity. Here, definite standards are established to control the decision of the Tax Commissioner. There must be (1) an arrangement (2) between two commonly owned corporations (3) in such a manner improperly, inaccurately, or incorrectly to reflect (4) the business done or the Virginia taxable income earned from business done in this State. The Department may equitably adjust the tax only if those criteria are met. *Cf. Booth* v. *Commonwealth*, 197 Va. 177, 88 S.E.2d 916 (1955) (statutory term "improper person," standing alone, held unconstitutionally vague and indefinite).

For these reasons, the judgment of the trial court will be reversed, but we are unable to enter final judgment. According to stipulation 19, the audit assessments at issue were attributable to several factors, some of which were not in issue on appeal and about which the Department conceded erroneous action. In their appellate briefs, the parties have given us no guidance on the overall disposition of the application for correction of the allegedly erroneous assessments in the event we decided the issues on appeal in favor of the Commonwealth. Therefore, the proceeding will be remanded to the trial court for entry of an appropriate judgment consistent with the views expressed in this opinion.

*Reversed and remanded.*