Mollie B. THURSTON, Plaintiff,

v.

ROANOKE CITY SCHOOL BOARD, et al., Defendants.

Civil Action No. 97–0731–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Nov. 9, 1998.

---

John Palmer Fishwick, Jr., Lichtenstein & Fishwick, Roanoke, VA, for Plaintiff.

Wilburn C. Dibling, Jr., City Attorney, City of Roanoke, Roanoke, VA, William X. Parsons, Office of City Attorney, Roanoke, VA, for Defendant.

## FINAL ORDER

WILSON, Chief Judge.

In accordance with the Memorandum Opinion filed today, it is hereby **ORDERED and ADJUDGED** that the Defendants' motion for summary judgment is **GRANTED**. Plaintiff's motion for partial summary judgment is **DENIED**. This case is ordered stricken from the docket.

## MEMORANDUM OPINION

This matter is before the court on defendant's motion for summary judgment. Mollie B. Thurston ("Thurston") brought this action against the Roanoke City School Board (the "Board").[1] She challenges the manner in which the Board dismissed her from her teaching position at Fishburn Park Elementary School ("Fishburn"). Thurston, pursuant to 42 U.S.C. § 1983 (1994), alleges that the Board deprived her of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution. According to Thurston, she attained "continuing contract status" under Va. Code Ann. § 22.1–304 (Michie 1997), and when the Board fired her, it deprived her of her property interest in public employment without notice and a hearing. Thurston argues, in the alternative, that if she had not attained continuing contract status, she was a probationary teacher. She contends that when the Board did not renew her annual contract that it failed to abide by Va.Code Ann. § 22.1–304 (establishing procedures for

---

1. In her complaint, Thurston also brought suit against the individual members of the Board and the school system superintendent, E. Wayne Har-ris ("Harris"). On March 18, 1998, this court dismissed the school board members and Harris as parties to this suit.

the nonrenewal of a probationary teacher's annual contract). The Board moved for summary judgment on all issues. Thurston moved for partial summary judgment on the issue of whether she attained continuing contract status. Finding that there are no genuine issues of material fact, this court grants the Board's motion for summary judgment and denies Thurston's motion for partial summary judgment.

## I.

In the fall of 1992, the Board hired Thurston for a part-time position as a Family Training Specialist ("FTS"). The Board hired Thurston as a full-time FTS for the 1993–94 school year. Thurston signed a standard "Annual Form Contract for Professional Personnel" ("Annual Form Contract"), which listed her position as a "Family Training Specialist." (Pl.'s Mem. Supp. Mot. Partial Summ. J. Ex. C.) A line on the contract was circled to indicate that she held a "valid Virginia license issued by the Board of Education." Thurston signed an identical contract for the 1994–95 school year. In 1993, a supervisor told Thurston that an FTS would need a teaching certificate. (Thurston Dep.)

As an FTS, Thurston worked with parents to show them how to educate their children. She conducted training sessions with parents, visited the homes of students and parents, trained teachers, and observed students in the classroom. (Id. at 17.) During "home visits," Thurston instructed parents and students at the same time. (Id. at 28.) When Thurston was in the classroom, she was always supervised by a classroom teacher. (Id. at 25–26.) Her supervisor used the standard "Teacher Performance Review Summary" to evaluate her performance. She was the only FTS employed by the Roanoke City School System (the "School System"). (Gibson Dep. at 7.)

The Annual Form Contract, which Thurston signed as an FTS, was used primarily for teachers. The Board also used the Annual Form Contract for professional staff who were not teachers and who had no interaction with students, such as the Controlller, the Director of Food Services, the Director of Transportation, and the Supervisor of Facility Maintenance. (Def. Resp. Pl.'s Interrog. & Req. Prod. Docs. Attach. A.)

In April 1995, the funding for the FTS program was cut, and the School System notified Thurston that her position would be eliminated. (Pleasants's Aff. Attach. B.) Thurston learned of a position as a classroom teacher at Fishburn, and she submitted her application. When processing her application, the School System followed the procedure for hiring a new teacher, not the procedure used for teachers transferring from one position to the another. (Pleasants's Aff. at 1.) Thurston attended new teacher orientation, which was not required for those with teaching experience in that school division. (Id.) She signed the same Annual Form Contract she had signed when she was an FTS, except the contract specifically listed her position as "teacher." (Def.'s Mot. Supp. Summ. J. Ex. 18.) The Board renewed her contract for the 1996–97 school year, and she again signed an Annual Form Contract. She did not sign a "Continuing Form Contract With Professional Personnel," which is issued to teachers who, after completing a three year probationary period, have attained continuing contract status.

The school system was not satisfied with her performance as a teacher. In March 1997, Fishburn principal Thomas Dunleavy advised Thurston that he intended to recommend nonrenewal of her annual contract. On March 17, 1997, Thurston submitted a letter of resignation ("Resignation Letter"), which had an effective date of June 30, 1997. (Pleasants's Aff. Attach. F.) Once the Board received the letter, the school system terminated the nonrenewal process for Thurston's annual contract. Thurston knew that the Board would stop the nonrenewal process. (Thurston Dep. at 96.) In fact, Thurston intended for the Board to rely on her Resignation Letter. (Id.) The Board was scheduled to act on her Resignation Letter on April 8, 1997. (Pleasants's Aff. at 2.) On April 7, 1997, Thurston rescinded her Resignation Letter. (Id. Attach. G.) On April 11, 1997, Superintendent Harris attempted to notify Thurston by letter of his intention to recommend nonrenewal of her contract. (Id. at 2.) The Board sent the letter by certified

mail, but it was returned unopened. (*Id.* Attach. K.) The Board approved the nonrenewal of Thurston's contract in June 1997. (*Id.* at 2.) Thurston then initiated this suit.

## II.

Thurston claims that the Board violated the Fourteenth Amendment by depriving her of property without due process of law. According to Thurston, the Board violated her due process rights because she had attained continuing contract status and, thus, had a protected property interest that the Board deprived her of when it fired her without notice and a hearing. *See* Va.Code Ann. § 22.-1–309, 311–12 (establishing procedures for dismissing a teacher who has attained continuing contract status). Alternatively, Thurston claims that she was a probationary teacher. She argues the Board failed to comply with Va.Code Ann. § 22.1–304 because it failed to notify her by April 15, 1997 that it would not renew her annual contract.

A public school teacher in Virginia who has attained continuing contract status has a property interest protected by the due process clause. *See Bishop v. Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Lee–Warren v. School Bd.,* 792 F.Supp. 472, 473 (W.D.Va.1991) (noting that the court had previously found that "continuing contact status amounted to a protected property interest...."); *Wilkinson v. School Bd.,* 566 F.Supp. 766, 769 (E.D.Va.1983) (finding that a teacher with continuing contract status had a protected property interest in not having her employment suspended); Va.Code Ann. § 22.1–304 (providing that

teachers who have completed the probationary period are entitled to continuing contracts during "good behavior and competent service").

The issue in this case is whether Thurston was a "teacher" during the two years she worked as an FTS. Va.Code Ann. § 22.1–303 requires that a teacher serve a probationary term of three years. After three years of service, the teacher is entitled to a continuing contract. *See* § 22.1–304. If Thurston was a "teacher" when she was an FTS, then she completed three years of probationary service and attained continuing contract status after the 1995–96 school year. If Thurston was not a "teacher" when she was an FTS, then she was a probationary teacher with two years' of service when the Board decided not to renew her contract.

The Virginia Code does not define the term "teacher." The Virginia State Board of Education (the "State Board") defines "teacher" as "a person (i) who is regularly employed full time as a teacher, visiting teacher/school social worker, guidance counselor, or librarian, and (ii) who holds a valid teaching license." 8 VAC 20–440–10. Under Virginia law, courts defer to interpretations of statutes by public officials charged with their enforcement. *See Southern Spring Bed Co. v. State Corp. Comm'n,* 205 Va. 272, 136 S.E.2d 900, 902 (Va.1964).[2]

FTS is not listed in the State Board's definition of teacher. Nevertheless, Virginia law does not allow a school board to rearrange titles to prevent a teacher from attaining continuing contract status. *Cf.* 1982–83

---

2. Along similar reasoning, the Board argues that Thurston could not have been a teacher because an FTS is not required to have a valid teaching license. The Board proffered the affidavit of Dr. Thomas Elliott, Assistant Superintendent for Teacher Education and Licensure for the Virginia Department of Education, who opined that state law would not require an FTS to have a state license. (Elliott Aff. at 2.) The Board contends that this court should defer to Dr. Elliot's construction of §§ 22.1–303–304 because he is the official charged with administering the state licensure requirements. As the previously cited case attests, Virginia courts give deference to agency interpretations. Such deference, however, is based on the presumption that the General Assembly is aware of the interpretation. This

requires publication of the construction. As the Virginia Supreme Court stated: "Without publication of the construction placed upon the statute by the [agency], no presumption of legislative acquiescence attaches." *Commonwealth v. Champion Int'l Corp.,* 220 Va. 981, 265 S.E.2d 720, 726 (Va.1980). Dr. Elliott's opinion that an FTS would not need a teaching certificate, without proof that this interpretation was published, is owed no deference from this court. Additionally, the State Board's regulation only requires that a "teacher" hold a license, not that the license be required for the position. It is undisputed that Thurston held a valid teaching license. At a minimum, she meets the clause (ii) requirement of the State Board's definition of teacher.

Va. Op. Att'y Gen. 451, *available at* 1982 WL 175691 ("[T]he school board and administration cannot avoid or frustrate the clear intent of the General Assembly to establish a continuing contract system for teachers by labeling as 'long term substitutes' those who are in fact probationary teachers employed on an annual contract basis."). The State Board's regulation and the record, however, provide little basis on which to conclude that Thurston was a "teacher" when she worked as an FTS.

■ The definition of "teacher" in clause (i) of the State Board's regulation may encompass positions that do not carry the title of "teacher." An FTS, however, is not such a position, as is demonstrated by examining the other positions specifically listed in clause (i). *See Third Nat'l Bank v. Impac Ltd., Inc.,* 432 U.S. 312, 322, 97 S.Ct. 2307, 53 L.Ed.2d 368 (1977) ("It is a familiar principle of statutory construction that words grouped in a list should be given related meaning."); *Turner v. Commonwealth,* 226 Va. 456, 309 S.E.2d 337, 339 (1983) (stating that "the maxim *noscitur a sociis,* which translates 'it is known from its associates,' provides that the meaning of a word takes color and expression from the purport of the entire phrase it is a part, and must be read in harmony with its context."). There is one common thread that runs through all of the positions specifically listed by the State Board as "teachers," and it provides guidance in this case. Librarians, visiting teachers/school social workers, guidance counselors, and teachers, as commonly understood, all primarily interact act with and serve students. Librarians serve students in the school library. Visiting teachers/school social workers serve students as liaisons with support agencies to help students succeed in school. Guidance counselors provide school and life-skills advice to the students. Although Thurston was in the classroom as an FTS, she was only observing and was always under the direction of the teacher. (Thurston Dep. at 25–26.) Students were present during her "home visits," but her purpose was to instruct the parents, not the students. (Gibson Dep. at 45; Pleas-

ants's Dep. at 5.) When Thurston worked as an FTS, she primarily interacted with and served parents. Her goal was to help parents become better educators. The common thread in all of the position's listed in the State Board's regulations, interacting and serving students, was not a part of an FTS's primary function, aiding parents. This fundamental divergence between an FTS's primary function and the primary functions of the other positions listed as "teacher" counsels against rewriting the State Board's regulation to include an FTS within the definition of "teacher."

Moreover, before this litigation the parties did not consider an FTS to be a "teacher." Thurston's FTS annual contracts *did not list* her as a "teacher." The school system did use the same form to evaluate Thurston when she was an FTS as was used for teachers.[3] Yet, when she applied for the position at Fishburn, she completed the same procedure used for hiring new teachers. Additionally, Thurston did not request a continuing contract for the 1996–97 school year, even though she had worked in full-time positions for the School System for three years.

■ Finally, Thurston claims to fit under the definition of teacher as a "visiting teacher/school social worker." (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 8 ("At times, she wore the hat of visiting teacher and at times a classroom teacher.").) Thurston did not meet the requirement for a "visiting teacher/school social worker" because that position requires a master's degree with an endorsement in "visiting teaching." (Pleasants's Dep. at 10.) Thurston's activities as FTS do bear some resemblance to those of a visiting teacher, e.g., both visit the homes of students. Nevertheless, as mentioned previously, the primary function of a visiting teacher/school social worker is different from the primary function of an FTS. Visiting teachers/school social workers serve as liaisons between the home and support services for students. R. Faye Pleasants, head of human resources for the School System, testified that visiting teachers/school social workers are used when "there are issues that affect

---

**3.** Mary Ann Gibson, Thurston's immediate supervisor, testified that she used this form because it

was the only form available. (Gibson Dep. at 34.)

children, that keep them from being successful in school, factors outside [the school]...the visiting teacher serves as a liaison with community agencies and so forth to help children." (*Id.* at 10.) As an FTS, Thurston worked primarily with parents, not with students.

Consequently, this court finds that Thurston was not a "teacher" when she served as an FTS. She had not attained continuing contract status because she had only worked as a teacher for two years. Therefore, she did not have a property interest in public employment protected by the due process clause.

### III.

Thurston argues that if she was a probationary teacher, then the Board violated Va. Code Ann. § 22.1–304 when it failed to notify her by April 15, 1997 that it would not renew her contract for the 1997–98 school year.[4] The Board contends that Thurston is estopped from claiming a violation of § 22.1–304 because of the Resignation Letter. Thurston contends that summary judgment is inappropriate because there is a factual dispute about whether the "notice deficiency" was caused by Thurston's withdrawing her resignation or Defendant failing to act in time. (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 6.)

Although probationary teachers do not have the same protections as continuing contract teachers, the Virginia Code affords probationary teachers some limited procedural rights. *See generally Dennis v. County Sch. Bd.*, 582 F.Supp. 536, 538–43 (W.D.Va.1984) (describing the requirement of § 22.1–304–305). Section 22.1–304 states:

> Except as provided in § 22.1–305, written notice of nonrenewal of the contract must be given by the school board on or before April 15 of each year. If no such notice is given a teacher by April 15, the teacher shall be entitled to a contract for the ensuing year in accordance with local salary stipulations including increments.

Section 22.1–305 establishes a series of procedural protections designed to give teachers an opportunity to "discuss the reasons for nonrenewal with the division superintendent or his designee...." § 22.1–305(H). Before the division superintendent recommends that the school board dismiss a teacher, the superintendent must notify the teacher. *See id.* § 305(A). The teacher then has five days from receipt of that notice to request the specific reasons for the recommendation and any supporting documentation. *See id.* Within ten days after receiving the superintendent's justification for requesting nonrenewal, the teacher may request a conference with the superintendent. *See id.* The superintendent must schedule a conference within the next thirty days and must give the teacher fifteen days notice before the conference is held. *See id.* The school board must then act on the teacher's contract within thirty days of the conference. *See id.* § 305(E). If a teacher requests a conference, the Board is not bound by the April 15 deadline in § 22.1–304. *See id.*

It is undisputed that Thurston submitted the Resignation Letter on March 17, 1997. Additionally, she admits that she knew that the board would rely on her letter. (Thurston Dep. at 96.) Indeed, she expected that the School System would stop the nonrenewal process. (*Id.*) Yet on the day before the Board was scheduled to act on her resignation, she withdrew the letter—giving the Board a scant eight days to comply with §§ 22.1–304–305. The School System tried to restart the nonrenewal process by sending her a letter notifying her that Harris intended to recommend nonrenewal. That letter was sent by certified mail but was returned by the post office. (Pleasants's Dep. Attach. K.)

Thurston contends that there is "a factual dispute as to whether this notice deficiency was caused by Plaintiff in withdrawing her resignation or by Defendant in failing to act in time." (Pl's Mem. Supp. Mot. Partial Summ. J. at 6.) Yet, there are no facts in the record that even suggest that the delay was

---

**4.** It is unclear from Thurston's complaint and the documents filed in this case whether Thurston lodges a breach contract claim based on § 22.1– 304 or if she claims a due process violation based on the Board's failure to abide by § 22.1–304.

due to anything other than Thurston's last minute revocation. Under these circumstances, the principle of equitable estoppel prevents Thurston from claiming that the Board violated § 22.1–304. In Virginia, the party asserting equitable estoppel must prove the following elements: (1) representation, (2) reliance, (3) change of position, and (4) detriment. *See Dominick v. Vassar*, 235 Va. 295, 367 S.E.2d 487, 489 (Va.1988); *Webb v. Webb*, 16 Va.App. 486, 431 S.E.2d 55, 61 (1993). In this case, Thurston represented that she would resign from her position. The Board, as she intended, relied on her letter of resignation and stopped the nonrenewal process. Thurston's actions prevented the Board from complying with §§ 22.1–304–305 and has subjected the Board to suit for failing to notify her by April 15. *See Dennis*, 582 F.Supp. at 538–43. As a matter of state law, the principle of equitable estoppel prevents Thurston from asserting that the Board's failure to notify her by April 15 entitles her to an annual contract for the 1997–98 school year. Thurston, thus, has neither a claim for a breach of contract based on § 22.1–304 nor a procedural due process claim.

### IV.

For the preceding reasons, the Board's motion for summary judgment will be granted. Thurston's motion for partial summary judgment will be denied.