PRESENT: Carrico, C.J., Hassell, Keenan, Koontz, and Lemons, JJ., and Compton and Stephenson, S.JJ.

YAMAHA MOTOR CORPORATION, U.S.A.

OPINION BY
v.  Record No. 021232    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.

November 1, 2002
ASBURY W. QUILLIAN, IN HIS CAPACITY
 AS THE COMMISSIONER OF THE DEPARTMENT OF MOTOR VEHICLES, ET AL.


UPON QUESTIONS OF LAW CERTIFIED BY THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

Pursuant to Article VI, Section 1 of the Constitution of Virginia and Rule 5:42, the United States District Court for the Eastern District of Virginia (the Federal Court), by its order entered May 17, 2002, certified four questions of law to this Court.  By order entered June 12, 2002, we accepted the certified questions.

I

On July 25, 2001, Yamaha Motor Corporation, U.S.A. (Yamaha) instituted an action in the Federal Court, pursuant to 42 U.S.C. § 1983, against Asbury W. Quillian, the Commissioner of the Virginia Department of Motor Vehicles (the Commissioner), and Jim's Motorcycle, Inc., d/b/a Atlas Honda/Yamaha (Atlas).  In its action, Yamaha challenged the second paragraph of Code § 46.2-1993.67(5), which places restrictions on motorcycle manufacturers and distributors who wish to establish new franchise dealers in the Commonwealth (the Second Paragraph).

Yamaha alleged that the Commissioner's interpretation and enforcement of the Second Paragraph "unduly interferes with [its] rights to engage in interstate commerce, restrains the establishment of new businesses and employment opportunities in Virginia, and deprives Virginia consumers of the benefits of lawful intrabrand competition." Accordingly, Yamaha asked the Federal Court to (1) declare that the Second Paragraph violates Article I, Section 8, Clause 3 of the Constitution of the United States, the so-called "dormant" Commerce Clause; (2) enjoin the Commissioner from enforcing the provisions of the Second Paragraph; and (3) enjoin Atlas from protesting the establishment of a Yamaha motorcycle dealership in Russell County.

The Federal Court determined that resolution of Yamaha's constitutional challenge depends upon the proper interpretation of the Second Paragraph. Accordingly, the Federal Court certified the following questions of law:

> "1. Whether the Second Paragraph grants to every existing Virginia franchised dealer of a line-make of motorcycles the right to receive forty-five days' advance notice of, and to protest, the establishment of any new or additional motorcycle dealer franchise of the same line-make in any county, city or town of Virginia, thereby placing on the manufacturer the burden of proving, in a formal evidentiary hearing, 'inadequate representation' of its line-make of motorcycles throughout the Commonwealth before it may proceed to establish that dealership?

2

"2. Whether the Commissioner was correct in interpreting the Second Paragraph in a manner such that only those protesting franchised dealers who make a preliminary showing that they actually are representing, 'in a not insubstantial way,' the line-make of motorcycles in the 'county, city or town' where the proposed new or additional dealer would be located will qualify for a formal evidentiary hearing in which the manufacturer would bear the burden of proving 'inadequate representation' of that line-make, by the protesting franchised dealer, in that 'county, city or town?'

"3. Whether the Second Paragraph should be interpreted to make the advance notice and protest rights granted therein applicable to only existing franchised dealers of a line-make of motorcycles which are located in the same 'county, city or town' in which a proposed new or additional motorcycle dealer franchise of the same line-make would be established, and to limit the burden on the manufacturer to proving 'inadequate representation' of its line-make merely in that 'county, city or town?'

"4. If none of the three aforementioned interpretations of the Second Paragraph is correct, what is the correct interpretation of the statute?"

II

Code § 46.2-1993.67(5), a part of the Motor Vehicle Code, contains two paragraphs. Pursuant to the first paragraph, an existing motorcycle dealer has the right to protest the establishment of a new dealership of the same line-make of motorcycles within its "relevant market area," which is defined, in Code § 46.2-1993, as 7-, 10-, 15-, or 20-mile radii around the existing dealer's location, depending on population densities (the First Paragraph). The First Paragraph further provides that no new dealership may be established "unless the

3

Commissioner has determined, if requested by a dealer of the same line-make in the relevant market area . . . , and after a hearing on the matter, that there is reasonable evidence that after the grant of the new franchise, the market will support all of the dealers in that line-make in the relevant market area."

The Second Paragraph, enacted subsequent to the First Paragraph in 1997, provides, in pertinent part, as follows:

> No new or additional motorcycle dealer franchise shall be established in any county, city or town unless the manufacturer . . . gives advance notice to any existing franchised dealers of the same line-make. The notice shall be in writing and sent by certified mail, return receipt requested, at least forty-five days prior to the establishment of the new or additional franchise.  Any existing franchise dealer may file a protest within thirty days of the date the notice is received.  The burden of proof in establishing inadequate representation of such line-make motorcycles shall be on the manufacturer . . . .

Yamaha seeks to establish a new motorcycle dealer franchise at Rosedale, which is located in Russell County.  The proposed new dealer is a dealer of Suzuki-brand motorcycles and desires to add Yamaha-brand motorcycles to its product line.

Atlas is located in the City of Bristol and has been representing Yamaha in far Southwest Virginia for many years. In addition to Atlas, there is one other Yamaha dealer in Southwest Virginia, located in the Town of Wytheville.

4

At various times, Yamaha has expressed the view that Atlas' target market encompasses the area within a 30-mile radius of its location in Bristol. Most of Russell County and all or portions of more than a dozen other counties, cities, and towns are located within that 30-mile radius.

In 1999, Atlas, to better serve its target market, expanded its dealership by 14,500 square feet, at a cost of approximately $345,000, and hired additional personnel. Yamaha proposed to establish the new dealer in Russell County about the time Atlas was completing its expansion.

In compliance with the Second Paragraph, Yamaha gave notice of the proposed new dealer to Atlas and to Yamaha's 25 other existing Virginia dealers. Atlas then sent a letter of protest to the Commissioner.

Yamaha challenged Atlas' standing to protest the establishment of the new dealer, arguing that Atlas did not fall within the "relevant market area," as defined by the First Paragraph. Yamaha asserted that the Second Paragraph should be read to restrict protest rights to those existing dealers of the Yamaha brand located in the same city, county, or town as the proposed new dealer.

The Commissioner rejected Yamaha's assertion and determined that Atlas met the threshold standing requirement. The Commissioner further determined, however, that Atlas, in order

5

to obtain a formal evidentiary hearing, must show a substantial level of sales activity in Russell County.

The Commissioner determined, based on sales data submitted by Atlas and Yamaha, that Atlas had made a sufficient showing that it is actually representing Yamaha in Russell County and, therefore, is entitled to a formal hearing. In so deciding, the Commissioner stated, in pertinent part, the following:

> Although the language is not as artfully drawn as might have been desirable, it is clear that the primary objective of [the Second Paragraph] was to afford added protection to motorcycle dealers, above and beyond the relevant market area protection provided by [the First] Paragraph . . . . It is not entirely clear why such additional protection was provided only in the motorcycle dealer provisions and not in the motor vehicle dealer provisions (Va. Code § 46.2-1569), but presumably the 10, 15 and 20 mile limits on the definition of relevant market area applicable to both motorcycles and motor vehicles (compare Va. Code § 46.2-1500 to § 46.2-1993) might be considered less meaningful geographic limits for motorcycle dealers because there are far fewer franchised motorcycle dealers than motor vehicle dealers in Virginia. . . . Hence, it would be rational to assume that motorcycle dealers may need a larger sales territory in order to survive and that the 10, 15 and 20 mile limits for relevant market area protections are less appropriate for motorcycle dealers.

The Commissioner also determined that the Second Paragraph requires a motorcycle manufacturer to give at least forty-five days' notice of a proposed new dealer to every existing dealer of the same line-make in Virginia and that each existing dealer

6

has an unqualified right to file a protest. However, the Commissioner reasoned that,

> [i]f the existing dealer sells no motorcycles in that county, city or town, then there is no need to hold a formal evidentiary hearing to determine that the dealer is inadequately representing the franchisor there. No representation at all by the dealer, as a matter of law, must be considered "inadequate representation" in that county, city or town, and it would be unreasonable to require that a formal evidentiary hearing be held in order to arrive at that conclusion.

Therefore, the Commissioner interpreted the Second Paragraph to require a protesting dealer to make a preliminary showing that it represents, "in a not insignificant or insubstantial way," the same line-make motorcycles in the county, city, or town where the proposed new dealer would be located. The Commissioner would then decide on a case-by-case basis through an informal fact-finding proceeding, conducted pursuant to Code §§ 2.2-4019 and -4020(B) of the Virginia Administrative Process Act, whether to grant a formal evidentiary hearing under the Second Paragraph.

The Commissioner further determined that, if a formal evidentiary hearing is granted, the Second Paragraph requires the manufacturer to prove inadequate representation of its motorcycles based on the factors set forth in Code § 46.2-1993.73(D). That statute provides the following:

> For purposes of any matter brought to the Commissioner under subdivisions 3, 4, 5, 6 and 9 of

7

§ 46.2-1993.67 with respect to which the Commissioner is to determine whether there is good cause for a proposed action or whether it would be unreasonable under the circumstances, the Commissioner shall consider:

1. The volume of the affected dealer's business in the relevant market area;

2. The nature and extent of the dealer's investment in its business;

3. The adequacy of the dealer's service facilities, equipment, parts, supplies, and personnel;

4. The effect of the proposed action on the community;

5. The extent and quality of the dealer's service under motorcycle warranties;

6. The dealer's performance under the terms of its franchise; and

7. Other economic and geographical factors reasonably associated with the proposed action.

In addition, the Commissioner suggested that "market penetration" should be considered in determining "inadequate representation."

III

Yamaha contends that the Second Paragraph should be interpreted so that the phrase, "county, city or town," which is found in the first sentence, applies throughout the remainder of the Second Paragraph. Thus, according to Yamaha, only those existing dealers located in the same county, city, or town as the proposed new dealer would be afforded notice, allowed to file a protest, and granted a formal evidentiary hearing.

8

Further, in such hearing, the manufacturer would bear the burden of proving inadequate representation of its line-make only in that county, city, or town. Therefore, Yamaha urges us to answer Certified Question Three in the affirmative.

Atlas urges us to adopt, with one exception, the Commissioner's interpretation of the Second Paragraph. Atlas would have us require the manufacturer to bear the burden of proving inadequate representation in "the market area likely to be served by the new dealer," rather than in the county, city, or town in which the proposed new dealer would be located. Thus, as restated by Atlas, Certified Question Two would read as follows:

> Should the Second Paragraph, and the statutory scheme of which it is a part, be interpreted to mean that only those protesting franchised dealers who make a preliminary showing that they are actually representing "in a not insubstantial way" the line-make of motorcycles in the county, city or town in which the proposed new dealer would be located will qualify for a formal evidentiary hearing in which the manufacturer would bear the burden of proving inadequate representation of that line-make by the protesting dealer in <u>the market area likely to be served by the new dealer</u>?

(Emphasis added.)

IV

A

In construing the statute at issue, we are guided by a number of well-established rules. First and foremost, we

9

endeavor to determine the intent of the General Assembly as gleaned from the words in the statute. Va. Society for Human Life v. Caldwell, 256 Va. 151, 156, 500 S.E.2d 814, 816 (1998). If, however, the words in the statute are not sufficiently explicit, we may determine legislative intent "from the occasion and necessity of the statute being passed [or amended]; from a comparison of its several parts and of other acts in pari materia; and sometimes from extraneous circumstances which may throw light on the subject." Richmond v. Sutherland, 114 Va. 688, 691, 77 S.E. 470, 471 (1913). Furthermore, the construction of a statute by the official charged with its administration, though not binding on us, is entitled to great weight. Commonwealth v. General Electric Company, 236 Va. 54, 64, 372 S.E.2d 599, 605 (1988); Winchester TV Cable v. State Tax Com., 216 Va. 286, 290, 217 S.E.2d 885, 889 (1975).

Additionally, when the constitutionality of a statute is challenged, we are guided by the principle that all acts of the General Assembly are presumed to be constitutional. Caldwell, 256 Va. at 156-57, 500 S.E.2d at 816; Hess v. Snyder Hunt Corporation, 240 Va. 49, 52, 392 S.E.2d 817, 820 (1990). Therefore, "a statute will be construed in such a manner as to avoid a constitutional question wherever this is possible." Eaton v. Davis, 176 Va. 330, 339, 10 S.E.2d 893, 897 (1940).

B

10

In the light of these principles, we will endeavor to determine the General Assembly's intent in enacting the Second Paragraph. At the outset, we agree with the Commissioner's observation that, "[a]lthough the language [in the Second Paragraph] is not . . . artfully drawn . . . , it is clear that the primary objective of [the Second Paragraph] was to afford added protection to motorcycle dealers, above and beyond the relevant market area protection provided by [the First] Paragraph."

We also agree with the Commissioner's observation that the Second Paragraph leaves certain matters unstated. The Second Paragraph does not expressly require a formal evidentiary hearing. While it does provide that a manufacturer has the burden of proof in establishing inadequate representation, this may occur in either a formal evidentiary hearing pursuant to Code § 2.2-4020, or an informal fact-finding proceeding under Code § 2.2-4019. Thus, it is reasonable to conclude that the Commissioner has discretion in determining whether a formal evidentiary hearing would be appropriate. Indeed, we have consistently held that a threshold standing determination ensures "that the person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case." Cupp v. Board of Supervisors, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984).

11

The Second Paragraph also does not expressly limit the rights to notice and protest only to existing dealers of the same line-make in the county, city, or town wherein the proposed new dealer would be located.  We think it is clear, therefore, that the phrase "any existing franchised dealer" in the Second Paragraph means any existing dealer of the same line-make of motorcycles in the Commonwealth of Virginia.

In addition, the Second Paragraph does not expressly state the geographical parameters within which the manufacturer must prove inadequate representation.  Arguably, absent a geographic modifier, inadequate representation would have to be proved throughout the Commonwealth; however, this interpretation would likely violate the Commerce Clause of the Federal Constitution. As the Commissioner correctly asserts, "such an interpretation would not appear rationally related to the legislative intent to protect individual dealers from the economic power of manufacturers."

While we agree with the Commissioner that the Second Paragraph does not require proof of inadequate representation on a statewide basis, we do not agree that proof of inadequate representation should be limited to the same county, city, or town in which the proposed new dealer would be located.  Such a limitation is not found in the Second Paragraph and conflicts with legislative intent.  As Atlas correctly observes, "[t]he

12

intent of the legislature was to provide motorcycle dealers a protest opportunity <u>not</u> limited by the arbitrary mileage restrictions of the First Paragraph."  We also agree with Atlas that limiting proof of inadequate representation to such county, city, or town "invites absurd outcomes in which the purpose of the Second Paragraph could easily be evaded."[1]

C

For these reasons, we reject Yamaha's interpretation of the Second Paragraph.  If we were to answer Certified Question Three in the affirmative, as Yamaha urges, we effectively would render the Second Paragraph superfluous.

V

In conclusion, we will restate Certified Question Two as set forth above in Part III of this opinion and answer it in the affirmative.  We answer Certified Questions One and Three in the

---

[1] For example, an existing dealer located within the City of Richmond would have no protest rights or opportunity to litigate the representation issue pursuant to the Second Paragraph with regard to a proposed new dealer located only a few blocks away, but in Henrico County.  That same dealer, however, would automatically get a hearing pursuant to the First Paragraph.  If the proposed new dealer were located as many as 20 miles away but within the City of Richmond, the existing dealer would have protest rights under both the First Paragraph and the Second Paragraph.  In the first situation, in which destructive intrabrand competition is more likely, the existing dealer's options are restricted.  In the second situation, in which destructive intrabrand competition is less likely, the existing dealer's options are not restricted.

13

negative, and we determine that Certified Question Four is inapplicable.[2]

> Certified Question Two restated and answered in the affirmative. Certified Questions One and Three answered in the negative.

---

[2] None of the parties advocated that Certified Question One be answered in the affirmative.