PRESENT: All the Justices

EDDIE DEERFIELD, ET AL.

                                                       OPINION BY

v.  Record No. 111144        ELIZABETH A. McCLANAHAN

                                           April 20, 2012

CITY OF HAMPTON, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Westbrook J. Parker, Judge Designate

The dispositive issue in this appeal is whether appellants, Eddie Deerfield, Joan Charles, Sandra Canepa, Shirley Gellis, and Mary Ashley, comprising the Committee of Petitioners of the Buckroe Beach Bayfront Park Petition (the "Committee"), had standing under the City of Hampton Charter (the "City Charter") to institute the instant declaratory judgment action against appellees, the City of Hampton (the "City") and POH 2010 LLC ("POH"). In its complaint, the Committee sought an order (i) declaring that POH's proposed development of a certain residential subdivision located in the City was unlawful, and (ii) enjoining such development. We conclude the Committee lacked standing to bring this action based on the limited authority granted to the Committee by the City Charter. The City Charter, under its referendum provisions, restricted the Committee's activities to pursuing a petition to repeal a newly enacted City zoning ordinance permitting the proposed development. For that reason, we will

affirm the judgment of the circuit court dismissing the Committee's complaint.

BACKGROUND

The Committee filed suit for declaratory judgment against the City and POH in the Circuit Court for the City of Hampton, pursuant to Code §§ 8.01-184 and -186. As alleged in its complaint, the Committee's dispute with the City and POH arose over actions of the City to allow POH to develop a residential subdivision on certain property located in the Buckroe Beach area of the City (the "Buckroe Beach Property"). Initially, the Buckroe Beach Property was not zoned for such development. On June 10, 2009, however, the Hampton City Council (the "City Council") approved an ordinance that rezoned the Buckroe Beach Property to a classification which permitted POH's proposed development of the property.

As the Committee further alleged, in response to passage of this ordinance the Committee was established, pursuant to the City Charter, to circulate and file a petition for a referendum on the ordinance. The Committee subsequently obtained the signatures of the requisite number of qualified voters and, on July 8, 2009, timely filed the petition with the City requesting, pursuant to the City Charter, (a) that the City Council repeal the ordinance, or (b) that a City-wide referendum on the ordinance be conducted if the City Council

2

did not repeal the ordinance. On August 12, 2009, "as a direct result" of the Committee's petition, the City Council repealed the ordinance, which had been approved "as a predicate to the development and construction of the Buckroe Beach Property by POH 2010 LLC, and restored the property to the preceding zoning classification that did not permit or authorize such development and construction."

Nevertheless, as alleged by the Committee, POH, with the City's assent, "manifested a present and actual intention" to proceed with the development of the Buckroe Beach Property in violation of the City's existing zoning ordinances and, in particular, "the rezoning effected by the [Committee's] [p]etition." The Committee then concluded by alleging that "there exists an actual antagonistic assertion of right by the [Committee] and the citizens whom [it] represent[s] and a denial of that right" by the City and POH. In its request for relief, the Committee accordingly asked for a declaration that the actions of the City and POH in furtherance of the subject development of the Buckroe Beach Property were "unauthorized and unlawful," and for enjoinment of the development.

The City and POH filed various defensive pleadings to the Committee's suit for declaratory judgment, including demurrers based on the Committee's alleged lack of standing, and, in the alternative, pleas in bar based on the Committee's alleged

3

failure to exhaust administrative remedies prior to filing this action.  In the demurrers addressing standing, the City and POH asserted, among other things, that the Committee failed to allege any facts showing that it had "a 'right' asserted and denied related to the development of the [Buckroe Beach] Property, justifying standing to adjudicate such a right" in a declaratory judgment action brought under Code §§ 8.01-184 and -186.  As to the pleas in bar, the City and POH asserted that the City's zoning administrator decided in a "Vested Rights Determination" issued on September 10, 2009, that POH had a vested right to develop the Buckroe Beach Property "despite the repeal of the now-former zoning ordinance"; and that the Committee failed to appeal that determination.  Thus, according to the City and POH, the Vested Rights Determination became final, and was not subject to collateral attack by the filing of the instant action.

In a hearing on their defensive pleadings, the City and POH presented evidence regarding the City administrator's Vested Rights Determination in favor of POH, including the Committee's failure to appeal the determination.  The circuit court subsequently issued a letter opinion holding that the Committee had standing to file the instant action, but that it did not exhaust its administrative remedies when it failed to appeal the City administrator's Vested Rights Determination "in

4

order to gain access to circuit court jurisdiction."
Accordingly, the circuit court entered final judgment
dismissing the Committee's complaint in this case.

ANALYSIS

We awarded the Committee this appeal on the issue whether
the circuit court erred in holding, upon the City's and POH's
pleas in bar, that this declaratory judgment action was barred
because of the Committee's purported failure to exhaust
administrative remedies before availing itself of the court's
jurisdiction. We also awarded the City an appeal on its
assignment of cross-error on the issue whether the circuit court
erred when it denied the City's and POH's demurrers and held
that the Committee had standing under the City Charter to file
this action. Because we conclude this assignment of cross-error
is dispositive, we do not address the Committee's assignment of
error or the City's other assignment of cross-error asserting
the circuit court erred in not dismissing this action as moot in
light of the Vested Rights Determination.

The threshold issue whether the Committee had standing to
seek declaratory judgment upon the allegations in its
complaint, as raised by the City's and POH's demurrers, is an
issue of law subject to de novo review on appeal. Virginia
Marine Res. Comm'n v. Clark, 281 Va. 679, 686-87, 709 S.E.2d
150, 154-55 (2011); Philip Morris USA Inc. v. Chesapeake Bay

5

Found., Inc., 273 Va. 564, 572, 643 S.E.2d 219, 223 (2007); Barber v. VistaRMS, Inc., 272 Va. 319, 327-28, 634 S.E.2d 706, 711 (2006).

Under well-settled principles, "[a] plaintiff has standing to institute a declaratory judgment proceeding if it has a 'justiciable interest' in the subject matter of the proceeding, either in its own right or in a representative capacity." W.S. Carnes, Inc. v. Board of Supervisors, 252 Va. 377, 383, 478 S.E.2d 295, 299 (1996) (citing Henrico Cnty. v. F. & W., Inc., 222 Va. 218, 223, 278 S.E.2d 859, 862 (1981) and Lynchburg Traffic Bureau v. Norfolk & Western Ry., 207 Va. 107, 108, 147 S.E.2d 744, 745 (1966)). To establish such an interest at the pleading stage, the plaintiff must allege facts "demonstrat[ing] an actual controversy between the plaintiff and the defendant, such that [plaintiff's] rights will be affected by the outcome of the case." Id. (citing Code § 8.01-184; Cupp v. Board of Supervisors, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984)).

Thus, when the complaint is challenged by a demurrer raising the issue of standing, a plaintiff has no legal standing to proceed in the case if its factual allegations fail to show that it actually has a " 'substantial legal right' " to assert. Kuznicki v. Mason, 273 Va. 166, 171, 639 S.E.2d 308, 310 (2007) (quoting Cupp, 227 Va. at 589, 318 S.E.2d at 411);

6

see Dunn, McCormack & MacPherson v. Connolly, 281 Va. 553, 558, 708 S.E.2d 867, 870 (2011) (explaining that "[i]n order to survive demurrer . . . a complaint must allege[] sufficient facts to constitute a foundation in law for the judgment sought" (citation and internal quotation marks omitted)).

Here, the Committee bases its alleged standing upon rights derived from the City Charter under which it was constituted. The Committee asserts on brief that this case "arises out of a provision of the Hampton City Charter, which provides its citizens with a procedure to file a [p]etition for [r]eferendum through a committee of petitioners."  More specifically, the Committee states, it was actually "empowered by statute [i.e. the City Charter] to collect, circulate and file the [p]etition for [r]eferendum" to repeal the subject June 10, 2009 ordinance that allowed development of the Buckroe Beach Property.  We recognize that, on the facts here alleged, the Committee would have been expressly empowered to do so under the provisions of the City Charter at §§ 3A-10 and 3A-11.[*]

_____

[*] Section 3A-10 provides in relevant part:

    If at any time within a thirty-day period following the adoption of an ordinance, a petition, signed by electors equal in number to twenty-five percent of the number of electors who cast their votes at the last preceding regular councilmanic election, . . . be filed with the clerk of the council, requesting that any such ordinance be repealed, or amended, as stated in the petition, such ordinance

7

shall not become operative until the steps indicated herein shall have been taken or the time allowed for taking such steps shall have elapsed without action. Such petition shall state therein the names and addresses of at least five electors, who shall be officially regarded as filing the petition, and who shall constitute a committee of petitioners for the purposes hereinafter stated. . . .

City Charter § 3A-10 (emphasis added).

Section 3A-11 then provides in relevant part:

The clerk to the council shall present the petition to the council at its next regular meeting, and thereupon the council shall consider the ordinance. If, within sixty days after filing of such petition, the ordinance is not repealed or amended as requested in such petition, the clerk to the council shall, if so requested by a writing signed by a majority of the committee and presented to the clerk to the council within twenty days after the expiration of sixty days, present to the clerk of the circuit court of the city, the petition . . . together with a copy of the ordinance the repeal . . . of which is sought. The clerk of the circuit court of the city shall examine the petition and ascertain and certify thereon whether the persons whose names are signed thereto are electors of the city, equal in number to twenty-five percent of the number of electors who cast their votes at the last preceding regular councilmanic election . . . . If such signatures do amount to such percentage, the committee shall present the petition to the circuit court of the city, and thereupon the said court shall forthwith enter an order calling and fixing a date for holding an election for the purpose of submitting the ordinance to the electors of the city. Thereupon the ordinance shall ipso facto be further suspended from going into effect until such election shall have been held and shall then be deemed repealed . . . upon the approval by a majority of those voting thereon.

City Charter § 3A-11 (emphasis added).

8

Seeking to extend its authority beyond the express terms of these provisions, however, the Committee asserts that what was before the circuit court in the instant suit for declaratory judgment was not "separate or unrelated actions by the Committee" in opposing the development of the Buckroe Beach Property. Rather, this suit comprised "an evolving legal dispute" between the Committee and the defendants over this proposed development. In other words, says the Committee, this suit was "spawned from the original petition for referendum under the Hampton City Charter." The Committee further contends that it has been "aggrieved by the violation of the restored ordinance brought about as a result of [its] actions," which gave it legal standing in this case. We disagree.

The Committee had no standing to bring suit to enforce a City ordinance in this case because it had no such right or authority, express or implied, under any reasonable construction of the terms of the enabling legislation under which it was created, §§ 3A-10 and 3A-11 of the City Charter. "In determining legislative intent, the rule is clear that where a power is conferred and the mode of its execution is specified, no other method may be selected; any other means would be contrary to legislative intent and, therefore, unreasonable." Commonwealth v. Arlington Cnty. Bd., 217 Va. 558, 577, 232 S.E.2d 30, 42 (1977). Furthermore, we have said

9

that, "[c]onsistent with the necessity to uphold legislative intent, the doctrine of implied powers should never be applied to create a power that does not exist or to expand an existing power beyond rational limits."  Id.  As this Court explained much earlier in Page v. Belvin, 88 Va. 985, 990, 14 S.E. 843, 845 (1892), when the mode of power to be exercised is prescribed in a municipal charter, that mode "constitutes the measure of the power," and "[a]side from the mode designated, there is a want of all power on the subject."

Under §§ 3A-10 and 3A-11 of the City Charter, the General Assembly established a specific mechanism limited to the petition for referendum on a City ordinance by the City's qualified voters.  See Acts 1981 ch. 366.  The procedure allows for at least five of those individuals to be named in the petition to carry out the duties essential to the petition process described in these provisions of the City Charter. City Charter § 3A-10.  These individuals, "constitut[ing] a committee of petitioners," are "officially regarded as filing the petition" after the requisite number of voters' signatures on the petition have been obtained.  Id.  If the City Council subsequently fails to repeal or amend the ordinance as requested in the petition, a majority of the "committee of petitioners" may ask the City clerk to file the petition with the clerk of the circuit court.  Then, if the petition meets

10

the requirements, the "committee of petitioners" may "present the petition to the circuit court" for entry of an order calling for a referendum election to repeal or amend the ordinance. City Charter § 3A-11.

Most significantly, for purposes of this case, no language in §§ 3A-10 and 3A-11 provides or suggests a continuing role for the "committee of petitioners" beyond the petition process. We thus conclude that when the City Council agreed to repeal the June 10, 2009 ordinance that allowed development of the Buckroe Beach Property, which negated the necessity of presenting the petition for repeal to the circuit court, the authority of the Committee to act, and its purpose to exist, came to an end. Following the City Council's repeal of the ordinance, the Committee clearly had no ongoing justiciable right or interest that could be aggrieved by the development of the Buckroe Beach Property such as would give rise to legal standing by the Committee to challenge the development in a declaratory judgment action.

The circuit court therefore erred in its determination that the Committee had standing to institute this action. However, the circuit court reached the right result in dismissing the Committee's complaint on other grounds. See Perry v. Commonwealth, 280 Va. 572, 579, 701 S.E.2d 431, 435

11

(2010) (applying the right result for the wrong reason doctrine).

CONCLUSION

For these reasons, we will affirm the judgment of the circuit court dismissing the Committee's complaint in this case.

<u>Affirmed</u>.