PRESENT: All the Justices

MICHAEL PAUGH

v. Record No. 121562

HENRICO AREA MENTAL HEALTH
AND DEVELOPMENTAL SERVICES

OPINION BY
JUSTICE CLEO E. POWELL
June 6, 2013

FROM THE CIRCUIT COURT OF HENRICO COUNTY
James S. Yoffy, Judge

In this appeal, Michael Paugh argues that the circuit court erred in using the date that the special justice entered the order committing him as the date upon which to evaluate the evidence on his appeal to the circuit court. He further contends that the circuit court erred in admitting the preadmission screening report into evidence in its entirety. Finally, Paugh asserts that the evidence was insufficient to involuntarily commit him on the day of his circuit court hearing.[1] We hold that Code § 37.2-821 requires that the circuit court determine whether an individual meets the requirements for involuntary commitment on the date of the circuit court hearing. Because we so hold, we do not reach the issue of whether Code § 37.2-816 permits the admission of the entirety of the preadmission screening report into evidence.

---

[1] Rule 5:17(c)(1)(iii) provides that "[a]n assignment of error that does not address the findings or rulings in the trial court . . . is not sufficient." Because the trial court did not hold that Paugh met the conditions for involuntary commitment on the date of the circuit court hearing, Paugh's third assignment of error is insufficient and we decline to

1

I.  FACTS AND PROCEEDINGS

On March 19, 2012, a Henrico County Magistrate issued a temporary detention order for Michael Paugh.  The following day, a special justice involuntarily committed Paugh pursuant to Code § 37.2-817.  Paugh appealed.

In a hearing in circuit court on May 18, 2012, the Commonwealth offered Paugh's preadmission screening report for admission into evidence.  That report contained information, relayed by Henrico Police, from Loretta Ewing, Paugh's friend, about why she contacted the police.  Ewing believed that Paugh was suicidal because of his contentious divorce, financial problems, and substance abuse history.  She informed police that he had written "good-bye" letters to his daughters that he read to her, one of which the police located.  Ewing also told the police that she believed that Paugh possessed guns.  Paugh objected to the narrative statement in the preadmission screening report being admitted in its entirety because Ewing's narrative statement was not a fact as contemplated by Code § 37.2-816.  The Commonwealth argued that the statements were adoptive admissions by Paugh or business records.  The circuit court held that the report was admissible in its entirety.

Paugh also argued that the issue before the circuit court was a de novo determination of whether he was committable on

address it.

the day of the hearing, not a review of whether he met the conditions for involuntary commitment on the date of his admission.  The court ruled that "common sense" required that it conduct a de novo appeal of whether Paugh should have been admitted on March 19, 2012, not on the day of the hearing.

As to the merits of the petition for involuntary commitment, the Commonwealth argued that Paugh had been properly admitted on March 19, 2012, but informed the court that because Paugh had been released Paugh no longer met the criteria for involuntary commitment and the Commonwealth would not seek further hospitalization or treatment.  After reviewing the evidence and hearing argument, the circuit court determined that there was clear and convincing evidence that Paugh was a danger to himself on March 19, 2012 and, therefore, the Involuntary Commitment Order was valid.  The court then denied Paugh's appeal.

## II.  ANALYSIS

This appeal presents an issue of first impression for this Court: in a de novo appeal of a general district court or special justice's determination that a person meets the requirements for involuntary commitment, is the circuit court to evaluate the evidence as of (i) the date of admission, (ii) the date of the lower court's hearing, or (iii) the date of the

circuit court hearing of the de novo appeal?[2]

We review a circuit court's interpretation of statutes de novo.  Jones v. Williams, 280 Va. 635, 638, 701 S.E.2d 405, 406 (2010).  This Court has

> repeatedly . . . stated the principles of
> statutory construction that apply when a
> statute . . . is clear and unambiguous.  In
> such circumstances, a court may look only
> to the words of the statute to determine
> its meaning.  The intention of the
> legislature must be determined from those
> words, unless a literal construction would
> result in a manifest absurdity.  Thus, when
> the legislature has used words of a clear
> and definite meaning, the courts cannot
> place on them a construction that amounts
> to holding that the legislature did not
> intend what it actually has expressed.

Hubbard v. Henrico Ltd. P'ship, 255 Va. 335, 339, 497 S.E.2d 335, 337 (1998)(citations omitted).

Code § 37.2-821(B) provides that an appeal

> shall be heard de novo in accordance with
> the provisions set forth in §§ 37.2-802,
> 37.2-804, 37.2-804.1, 37.2-804.2, and 37.2-
> 805, and (i) § 37.2-806 or (ii) §§ 37.2-814
> through 37.2-819, except that the court in
> its discretion may rely upon the evaluation

---

[2] The Commonwealth argues that this issue is moot because Paugh has been released from commitment.  Paugh, however, is subject to collateral consequences in this case because the trial court's ruling allowed the initial commitment order from the special justice to remain intact.  This Court has previously held that a case is not moot where collateral consequences remain. E.C. v. Va. Dep't of Juvenile Justice, 283 Va. 522, 530-36, 722 S.E.2d 827, 831-34 (2012); see also Tazewell Cnty. Sch. Bd. v. Brown, 267 Va. 150, 158, 591 S.E.2d 671, 674 (2004) (holding that the collateral consequences of a civil judgment prevented it from being moot).

4

report in the commitment hearing from which the appeal is taken instead of requiring a new evaluation pursuant to § 37.2-815. Any order of the circuit court shall not extend the period of involuntary admission or mandatory outpatient treatment set forth in the order appealed from.

Specifically, Code § 37.2-821(B) indicates that "[a]n order continuing the involuntary admission shall be entered only if the criteria in [Code] § 37.2-817 are met <u>at the time the appeal is heard</u>."  (Emphasis added.)

Code § 37.2-821(B) provides a de novo trial in the circuit court.  <u>See also</u> Code § 16.1-113.

> The purpose of this two-tier trial system is to allow a party aggrieved by a final judgment of the general district court to have the case tried again by the circuit court as if the case originally had been instituted there.  Such an appeal is in effect a statutory grant of a new trial, in which the perfected appeal annuls the judgment of the district court as completely as if there had been no previous trial.  If the judgment of the general district court is reversed, the circuit court is required to enter an order or judgment "as ought to have been made or given by the judge of the court from which the appeal was taken."  Code § 16.1-113.

<u>Ragan v. Woodcroft Village Apts.</u>, 255 Va. 322, 327, 497 S.E.2d 740, 742 (1998)(citations omitted).[3]

---

[3] Although Code § 37.2-821(A) provides that a petition for appeal does not automatically suspend an order of the judge or special justices, this does not affect the fact that a de novo trial is in effect a statutory grant of a new trial.

5

The Code provides that the de novo trial allows the case to be tried in the circuit court as if the case originally had been instituted there.  This means that the proceeding before the circuit court is a "Petition for Involuntary Admission for Treatment," not a review of the lower court's decision.  Thus, the plain meaning of the language used by the General Assembly in the statute clearly indicates that the circuit court is to evaluate whether the individual meets the requirements for involuntary commitment as of the day of the circuit court's hearing and not on any other day.

This interpretation finds support in the fact that the circuit court is to follow the procedure set forth in Code §§ 37.2-814 through -819, the same procedure that the general district court followed.  Specifically, the following provisions govern the proceeding in the circuit court:

> After observing the person and considering (i) the recommendations of any treating or examining physician or psychologist licensed in Virginia, if available, (ii) any past actions of the person, (iii) any past mental health treatment of the person, (iv) any examiner's certification, (v) any health records available, (vi) the preadmission screening report, and (vii) any other relevant evidence that may have been admitted, including whether the person recently has been found unrestorably incompetent to stand trial after a hearing held pursuant to subsection E of § 19.2-169.1, if the judge or special justice finds by clear and convincing evidence that

6

(a) the person has a mental illness and there is a substantial likelihood that, as a result of mental illness, the person will, in the near future, (1) cause serious physical harm to himself or others as evidenced by recent behavior causing, attempting, or threatening harm and other relevant information, if any, or (2) suffer serious harm due to his lack of capacity to protect himself from harm or to provide for his basic human needs, and (b) all available less restrictive treatment alternatives to involuntary inpatient treatment, pursuant to subsection D, that would offer an opportunity for the improvement of the person's condition have been investigated and determined to be inappropriate, the judge or special justice shall by written order and specific findings so certify and order that the person be admitted involuntarily to a facility for a period of treatment not to exceed 30 days from the date of the court order.

Code § 37.2-817(C).

Moreover, the General Assembly drafted the Code to allow the circuit court, in its discretion, to order a new evaluation rather than rely upon the one previously conducted. See Code §§ 37.2-815, -821(B). Clearly, this indicates that the evidence should be viewed as of the date of the circuit court hearing and not frozen in time as of the general district court hearing.

Because the General Assembly clearly intended that the circuit court examine the evidence as of the date the individual appears in the circuit court, the circuit court

erred in evaluating the evidence as of the day that Paugh was admitted. Here, the Commonwealth conceded and the court agreed that the evidence was insufficient to commit Paugh as of the day of the circuit court hearing. Thus, the circuit court should have dismissed the Commonwealth's petition for involuntary commitment.

### III.  CONCLUSION

For the foregoing reasons, we hold that the day that the de novo hearing is conducted is the proper date on which to consider whether the individual should be committed. The circuit court used the incorrect date in this case. Because the Commonwealth conceded and the court agreed that the evidence was insufficient to commit Paugh as of the date of the circuit court hearing, we reverse the circuit court's judgment and dismiss the Commonwealth's petition for involuntary commitment.

<u>Reversed and dismissed.</u>

JUSTICE MIMS, concurring.

The collateral consequences for which Paugh seeks redress are real, and potentially of constitutional magnitude. Consequently, the majority is correct that this case is not moot. However, a review of the overall statutory scheme of Chapter 8 of Title 37.2 reveals that the path to address such collateral consequences is not found within Code § 37.2-821 or

the remainder of Article 5.  Rather, it is found within Article 8, which is captioned "Testing Legality of Detention," and for purposes of this case, particularly in Code § 37.2-846(A).  Nevertheless, because the Commonwealth failed to object or assign cross-error to the circuit court's use of Code § 37.2-821 rather than Code § 37.2-846(A), the incorrect application of Code § 37.2-821 is now the law of the case.  Trustees of Asbury United Methodist Church v. Taylor & Parrish, Inc., 249 Va. 144, 154, 452 S.E.2d 847, 852 (1995) (where a party "did not object or assign error to [the circuit court's] ruling, it . . . become[s] the law of the case").  Therefore, I reluctantly must concur in the result.

When considering the plain meaning of a statutory provision to determine the legislature's intent in adopting it, we may consider as a whole the entire legislative enactment from which it was codified.  Eberhardt v. Fairfax County Emps. Ret. Sys. Bd. of Trs., 283 Va. 190, 194-95, 721 S.E.2d 524, 526 (2012).  The current incarnations of both Code §§ 37.2-821 and 37.2-846 trace their origins to a single legislative enactment recommended by the Virginia Code Commission.  2005 Acts ch. 716; see also House Doc. No. 31, Virginia Code Commission, Report on the Revision of Title 37.1 of the Code of Virginia (2005).  In particular, Chapter 8 was deliberately constructed to organize disparate provisions of former Title 37.1 into a

9

"streamlined" and "comprehensible" structure when that former title was revised and recodified as Title 37.2.  Id. at 5.

Article 5 of Chapter 8 is captioned "Involuntary Admissions."  A review of the article in its entirety reveals that the expedited circuit court review mandated by Code § 37.2-821 is intended for those instances when the person remains involuntarily committed or, if no longer committed, remains subject to an unexpired commitment order.  There can be no other reason why the General Assembly would require such cases to be filed within 10 days of the initial commitment and to have the highest priority on the circuit court's docket as expressly directed by the statute:

> Any person involuntarily admitted to an inpatient facility or ordered to mandatory outpatient treatment pursuant to §§ 37.2-814 through 37.2-819 . . . shall have the right to appeal the order to the circuit court . . . .  An appeal shall be filed within 10 days from the date of the order and shall be given priority over all other pending matters before the court and heard as soon as possible, notwithstanding § 19.2-241 regarding the time within which the court shall set criminal cases for trial. . . .

Code § 37.2-821(A).[1]

Following this line of reasoning, the majority correctly

---

[1] The filing period was reduced to 10 days from 30 days in 2010.  2010 Acts chs. 544 & 591.  However, review was given docket priority in the original version of the statute, 2005 Acts ch. 716, as it had been in its predecessor, former Code §

10

holds that the circuit court "is to evaluate whether the individual meets the requirements for involuntary commitment as of the day of the circuit court's hearing and not on any other day." The circuit court's sole task when Code § 37.2-821 is viewed within the framework of Article 5 is to determine, immediately and without delay, whether the continued and prospective commitment is lawful.

In this case, the circuit court did not hold the Code § 37.2-821 de novo hearing for more than eight weeks, rather than giving it "priority over all other pending matters" as required by the statute. Code § 37.2-821(A). This was error. As a consequence of the resulting delay, Paugh was not subject to continuing or prospective commitment by the time this matter actually was heard. The civil commitment order already had expired by its own terms.

Nonetheless, Paugh faced significant continuing collateral consequences based upon the civil commitment order. Presuming that the General Assembly was aware of such potential consequences, would it have given appellants a mere 10 days to raise them by way of circuit court appeal? Or required the circuit court to expedite its consideration of them?[2]

---

37.1-67.6. House Doc. No. 31 at 180.

[2] The particular collateral consequence aggrieving Paugh is the effect of a commitment order on his ability to possess firearms. See Code § 18.2-308.1:3(A) (prohibiting possession

11

Due process requires that there be an avenue for constitutionally cognizable collateral consequences to be addressed. <u>Zinermon v. Burch</u>, 494 U.S. 113, 125-26 (1990) (failure to provide a remedy for an erroneous deprivation of a constitutionally protected interest is an unconstitutional denial of procedural due process). However, the proper avenue to address such claims is not found within Code § 37.2-821; rather, it is found within Code § 37.2-846(A):

> § 37.2-846. Procedure when person not confined in facility or other institution
>
> A. In all cases, other than those provided for in § 37.2-845, the person may file his petition [to test the legality of his detention] in the circuit court of the county or the city in which he resides or in which he was found to have a mental illness or in which an order was entered authorizing his continued involuntary inpatient treatment, pursuant to Article 5 (§ 37.2-814 et seq.) of Chapter 8 of this title.

It is apparent that this is a separate and distinct appeal from the expedited de novo appeal procedure set forth in Code § 37.2-821. Were this not so, Code § 37.2-846(A) would be

---

of firearm by "any person . . . involuntarily admitted to a facility or ordered to mandatory outpatient treatment as the result of a commitment hearing pursuant to Article 5 (§ 37.2-814 et seq.) of Chapter 8 of Title 37.2"). Though the General Assembly shows great respect for the constitutional right to keep and bear arms, it is difficult to imagine that this respect would cause it to mandate that a circuit court hearing relating to that right <u>must</u> take precedence even over the speedy trial statute for incarcerated criminal defendants.

superfluous.  See Commonwealth v. Squire, 278 Va. 746, 752, 685 S.E.2d 631, 634 (2009) ("We do not consider actions of the General Assembly to be superfluous; instead, we seek to provide meaning to all the words of a statute."); Yamaha Motor Corp. v. Quillian, 264 Va. 656, 667, 571 S.E.2d 122, 127-28 (2002) (rejecting an asserted interpretation that would render the provisions of a part of a statute superfluous).

Accordingly, because the only issues remaining at the time of the circuit court hearing were the collateral consequences of the initial commitment order, Code § 37.2-821 was no longer applicable and Code § 37.2-846(A) provided the proper means for Paugh to challenge his initial commitment. That being so, the proper inquiry in the circuit court and in this Court would have been whether Paugh's commitment was according to law on the day when the order was entered rather than on the day of the hearing as contemplated by Code § 37.2-821.  Regrettably, this Court's hands are tied, as there was no objection or assignment of cross-error to the circuit court's improper use of Code § 37.2-821.  To the extent this predicament resulted from the statutory scheme's failure to anticipate that a Code § 37.2-821 hearing could occur long after a commitment had ended and the concomitant commitment order had expired, the General Assembly may wish to consider clarifying the interrelationship between Code §§ 37.2-821 and 37.2-846(A).

13

JUSTICE McCLANAHAN, concurring in part and dissenting in part.

I agree that the circuit court erred in its construction and application of Code § 37.2-821, but I disagree with the majority's alternative construction and application of the statute. Also, I disagree with Justice Mims' application of the law of the case doctrine, which results in his concurrence. In my opinion, the circuit court reached the right result in ordering dismissal of Paugh's appeal, but for the wrong reason. Thus, contrary to the majority and concurring opinions, I would affirm the judgment of the circuit court.[1]

1. Code § 37.2-821 Appeal and Paugh's Requested Relief

As a threshold matter, I agree with both the majority and concurring opinions that the relevant inquiry in a Code § 37.2-821 appeal ("821 appeal") is limited to whether an individual meets the criteria in Code § 37.2-817 for continued involuntary commitment "at the time the appeal is heard." Code § 37.2-821(B). Thus, for example, the issue in an 821 appeal may be whether at the time of the hearing before the circuit court there is "a substantial likelihood" in the near future that the individual will "cause serious physical harm to himself or

_____

[1] I concur with the majority, however, in holding that we need not address the admissibility of the preadmission screening report under Code § 37.2-816 in light of our respective views as to the proper disposition of this case under Code § 37.2-821.

14

others," Code § 37.2-817(C) – but not whether that was the case at the time of the initial hearing before the general district court judge or special justice.[2]  The majority and Justice Mims reach this conclusion through divergent statutory analyses.

I believe that, in this regard, Justice Mims is correct in his determination that a proper construction of the statute can only be reached by considering Chapter 8, Article 8 of Title 37.2, Code §§ 37.2-844 through -847, and in particular Code § 37.2-846 (entitled "Procedure when person not confined in facility or other institution") for purposes of this case.[3]  I also agree with Justice Mims that Paugh erroneously filed the instant action as an 821 appeal rather than utilizing the post-

---

[2] Significantly, because of this distinction, an 821 appeal is unique in that, unlike a typical appeal, the circuit court conducts a de novo trial upon a different inquiry than the one conducted by the lower tribunal from which the appeal derives. Each tribunal is required to evaluate the subject individual's mental condition as of the time of the respective proceeding; and, accordingly, the circuit court may in its discretion require a new mental evaluation report for the hearing in the 821 appeal.  Code § 37.2-821(B).  Those separate inquiries may, of course, render different psychological assessments (arising, for example, from the individual's intervening receipt of appropriate treatment), and necessarily require different conclusions as to the need for involuntary commitment.

[3] While we are unanimous in the conclusion that the circuit court erred in its construction of Code § 37.2-821, I concur with the circuit court's assessment that "there's nothing plain about this statute," requiring the application of principles of statutory construction to determine its meaning.  See Appalachian Power Co. v. State Corp. Comm'n, 284 Va. 695, 706, 733 S.E.2d 250, 256 (2012); Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).

release procedure available under Code § 37.2-846(A) for challenging his commitment.[4] Moreover, in his appeal, Paugh erroneously requested that the circuit court dismiss the Commonwealth's underlying petition for his involuntary commitment. The majority does not address this procedural error, however, in light of its construction of Code § 37.2-821.

2. Dismissal of Commonwealth's Petition

My principal disagreement with the majority goes to its disposition of the Commonwealth's petition for Paugh's involuntary commitment. Because Paugh did not meet the criteria for continued involuntary commitment at the time of the hearing in his 821 appeal, the majority concludes that the circuit court erred in refusing to dismiss the Commonwealth's petition. The majority thus reverses the trial court's judgment and dismisses the petition.

I find no language in Code § 37.2-821 requiring such a result. Rather, the statute sets forth the procedure for an expedited appeal to the circuit court for the limited purpose of allowing an individual to obtain his release if the evidence shows that he does not meet the criteria for continued involuntary commitment "at the time the appeal is heard." Code

_____

[4] Paugh concedes on brief that he was, in fact, released

16

§ 37.2-821(B).  Such a showing does not mean, however, that the initial commitment order was unlawful.  See supra note 2.  Code § 37.2-821 neither requires nor authorizes the circuit court to adjudicate the validity of the individual's initial commitment.  Nevertheless, under the majority's construction and application of the statute, every time an individual prevails in an 821 appeal, the underlying petition for involuntary commitment, along with the involuntary commitment order, will be rendered void as a matter of law, with no opportunity available to the Commonwealth to defend the validity of the initial commitment.

An additional consequence of the majority's construction and application of Code § 37.2-821 is that every individual who is committed under an involuntary commitment order, and thereby prohibited from purchasing, possessing or transporting a firearm pursuant to Code § 18.2-308.1:3(A), will have this restriction negated by a successful 821 appeal.  Indeed, avoidance of this prohibition is apparently Paugh's paramount objective in pursuing the instant action.

When a statute is susceptible to more than one construction, "courts will give that construction to it which will be the more reasonable."  Martz v. County of Rockingham, 111 Va. 445, 450, 69 S.E. 321, 322 (1910); see Ambrogi v. Koontz, 224 Va. 381, 389, 297 S.E.2d 660, 664 (1982)(explaining

the day before he filed his 821 appeal.

17

that "a statute should, if possible, be given a reasonable construction which will effect rather than defeat a legislative purpose").  Further, "we presume that the General Assembly does not intend the application of a statute to lead to irrational consequences."  Virginia Electric & Power Co. v. Citizens for Safe Power, 222 Va. 866, 869, 284 S.E.2d 613, 615 (1981) (citing F.B.C. Stores, Inc. v. Duncan, 214 Va. 246, 249-50, 198 S.E.2d 595, 598 (1973)).

I do not believe the majority's construction and application of Code § 37.2-821 is what the General Assembly intended, particularly when this statute is read in conjunction with Code §§ 37.2-844 through -847 setting forth other procedures under Chapter 8 of Title 37.2 for challenging the legality of one's involuntary commitment.  See Lucy v. County of Albemarle, 258 Va. 118, 129, 516 S.E.2d 480, 485 (1999) (statutes which are "'parts of the same general plan are . . . ordinarily considered as in pari materia'" (quoting Prillaman v. Commonwealth, 199 Va. 401, 405-06, 100 S.E.2d 4, 7 (1957))). A more reasonable construction and application of this statutory scheme is that a successful 821 appeal terminates the effectiveness of the petition for involuntary commitment and accompanying commitment order, but does not result in its outright dismissal.  Code § 37.2-846 would then provide the procedural avenue for challenging the validity of the

underlying petition and commitment order.

3.  Circuit Court's Dismissal of Paugh's Appeal

The circuit court ruled that the issue to be decided in this case was whether the special justice's order of involuntary commitment was lawful.  While that was error, the circuit court, having made that ruling, heard evidence regarding Paugh's mental condition as of the time of his involuntary commitment and found that he had been lawfully committed.  The circuit court therefore dismissed Paugh's appeal.  Had the circuit court correctly construed and applied Code § 37.2-821, it would have still been required to dismiss this action.  While the undisputed facts are that Paugh did not meet the criteria for involuntary commitment as of the time the circuit court heard his case, Paugh had already been released when he filed this action.  Therefore, the action was moot. See E.C. v. Va. Dep't of Juvenile Justice, 283 Va. 522, 530, 722 S.E.2d 827, 831 (2012); Franklin v. Peers, 95 Va. 602, 603, 29 S.E. 321, 321 (1898).

I would thus hold that the circuit court reached the right result in dismissing Paugh's appeal, but for the wrong reason. See Deerfield v. City of Hampton, 283 Va. 759, 767, 724 S.E.2d 724, 728 (2012) (affirming the trial court's judgment dismissing a declaratory judgment action by applying the right result for the wrong reason doctrine).  Accordingly, I would

19

affirm the judgment of the circuit court.[5]

_____

[5] I do not believe this result would be in conflict with the law of the case doctrine because, in my opinion, that doctrine has no application to this Court's decision on the issues presented in this appeal.  The issues of (i) how Code § 37.2-821 should be construed, and (ii) how the statute should be applied to the undisputed facts in this case, are squarely before this Court for our review upon Paugh's assignments of error. See Ilg v. United Parcel Service, Inc., 284 Va. 294, 301, 726 S.E.2d 21, 25 (2012) (holding that the law of the case doctrine was inapplicable to issues there on appeal); cf. Lane v. Starke, 279 Va. 686, 689 n.3, 692 S.E.2d 217, 218 n.3 (2010) (explaining that the subject ruling of the trial court that was not appealed became the law of the case).  Thus, I see no reason why this Court's resolution of these issues is constrained in the absence of a cross-assignment of error by the Commonwealth.