# CIRCUIT COURT OF FAIRFAX COUNTY

In re Jagtar Singh Dhanoa

Case No. CM-2012-0000304

In re Balbir Singh

Case No. CM-2012-0000305

In re Ajaib Singh

Case No. CM-2012-0000483

In re Gurminder Singh Bhatti

Case No. CM-2012-0000490

March 29, 2013

BY JUDGE DENNIS J. SMITH

## Procedural Background

Petitioners Jagtar Singh Dhanoa, Balbir Singh, Ajaib Singh, and Gurminder Singh Bhatti, are all members of the Sikh faith who filed Petitions with this Court seeking authorization to celebrate religious marriage ceremonies. Initially *pro se*, each submitted a form Petition available on the Court's website intended for applications under Va. Code § 20-23. The Court reviewed their applications and determined the statements contained therein did not qualify them as "ministers" eligible for appointment under § 20-23. The Court informed Petitioners of their right to an *ore tenus* hearing, and such a hearing was held on November 30, 2012. Petitioner Ajaib Sing did not attend the November 30, 2012, hearing, but his Petition

was joined with the others for the December 21, 2012, hearing, and he is represented by the same counsel. Based on assertions in the Petitions that Sikhism has no ordained ministers and on testimony given by Petitioners at the hearing, the Court determined that these petitions should be construed as being before the Court under Va. Code § 20-26 as applications for "[m] arriage between members of religious society having no minister."

At the November 30 hearing, Petitioners expressed concern about two requirements of § 20-26 that are not present in § 20-23. First, they objected that, under Va. Code § 20-26, only "[o]ne person chosen by the society shall be responsible for completing the certification of marriage." Second, they objected to that section's requirement that each provide a $500 bond with surety.

Due to the potential constitutional issue that Petitioners raised, the Court requested that the Office of the Attorney General intervene as Respondent pursuant to Virginia Supreme Court Rule 3:14. The Court also invited the American Civil Liberties Union of Virginia ("ACLU") to file a memorandum as *amicus curiae*. Subsequently, the Attorney General did intervene as Respondent, and the ACLU filed notice that it was directly representing Petitioners as counsel. A second *ore tenus* hearing was held on December 21, 2012.

### *Legal Analysis*

### I. *Construing Petitioners Under § 20-23*

Once represented by counsel, Petitioners suggested that the Court could avoid the underlying constitutional issues by approving Petitioners under § 20-23. Relying on *In re Application of Ginsburg*, 236 Va. 165 (1988), Petitioners argued that each is in a hierarchical position within their respective religious organizations that are akin to those held by the petitioner in *Ginsburg*:

> Dr. Ajaib Singh and Gurminder Singh Bhatti are the Chairman and Secretary, respectively, of the Board of Trustees of the Sikh Foundation of Virginia. Similar to Ginsburg, Trustees are responsible for assuring that the Temple affairs and services are managed and conducted according to the constitution and by-laws of the organization. Likewise, Balbir Singh and Jagtar Singh Dhanoa are the President and Treasurer, respectively, of Singh Sabha Gurdwara. All four have been selected for positions of trust by their religious organizations.

Petitioners' Brief ("Pet. Br.") 8.

Respondent did not directly take a position on this issue but indicated that the Commonwealth supports any action that will avoid calling the constitutionality of a statute into question.

In *Ginsburg*, the Supreme Court of Virginia held that the Quaker petitioner, as the Clerk of a Friends Meeting, was the "head of a religious congregation, society or order. He is set apart as the leader. He is the person elected or selected in accordance with ritual, bylaws, or discipline of the order." *Ginsburg*, 236 Va. at 167 (citing *Cramer v. Commonwealth*, 214 Va. 561, 567 (1974)). The petitioner was thus approved under § 20-23 to celebrate religious marriage ceremonies. Petitioners now suggest that, under a broad reading of *Ginsburg*, this Court can grant them authority pursuant to § 20-23.

While there are apparent similarities between the status of Petitioners and that of Ginsburg, Petitioners have each conveyed to the Court in their applications that there are no ministers or leaders in Sikhism. On the form completed by each Petitioner, Question 1(b) asks, "Are you serving as the minister of the congregation?" The answer each expressed, in one form or another, is that the "Sikh Religion has no ordained minister." See, e.g., Petition of Gurminder Singh Bhatti ("Pet. of Bhatti") Q. 1(b). Petitioners go on to clarify that "[t]here are no ordained ministers or clerical hierarchy in [the] Sikh religion. Any congregation member who is able to read and understand Sikh Scriptures, especially the Sikh holy book, Guru Granth Sahib, and is knowledgeable about Sikh theology and Sikh ceremonies can officiate Sikh prayers and Sikh ceremonies, including Sikh wedding ceremony." *Id.* Q. 3.

Furthermore, the *per curiam* opinion in *Cramer* held that the type of religious structure at issue here cannot have individuals approved under § 20-23. In *Cramer*, ordained ministers of the Universal Life Church did not fall under the definition of § 20-23 because, "[a] church which consists of all ministers, and in which all new converts can become instant ministers, in fact has no 'minister' within the contemplation of Code § 20-23." *Cramer*, 214 Va. at 567-68. Similarly, all members of these Sikh temples are equal in religious terms, and each member is equally entitled to officiate religious ceremonies including weddings. See Pet. of Bhatti, Q. 3. There is no difference between those who can perform these ceremonies and the general body of worshipers. The situation presented by this case is squarely governed by *Cramer* and therefore outside of the scope of § 20-23.

This Court must also give accordance to the wider statutory structure for appointing marriage officiants. In *Cramer*, the Virginia Supreme Court provided a brief historical overview of the development of § 20-23, tracing its roots to an Act of the General Assembly, October 1784, which authorized "any ordained minister of the gospel in regular communion with any society of Christians" to celebrate the rites of marriage. *Cramer*, 214 Va. at 564 (citing 1784 Va. Acts, ch. 76). The Court then acknowledged a long

struggle for religious freedom that "ultimately resulted in the enactment of legislation which granted the right to perform marriages to ministers of all faiths." *Id.* at 564. These Code sections do not "enforce a religious test," *id.*, and it is evident that the both the reforms made to § 20-23 and the addition of § 20-26 were intended to create a statutory scheme allowing members of all faiths to celebrate the rites of marriage.

The purpose of § 20-26 is clear: to provide a system through which members of religions without ordained ministers may be authorized to celebrate religious marriage ceremonies. This unquestionably applies to the Sikh Petitioners in this case who have repeatedly admitted that they are members of a religious society having no minister. This Court cannot hold that Petitioners are ordained ministers within the meaning of § 20-23. Accordingly, the question of the constitutionality of the two provisions of § 20-26 must be addressed.

## II. *The Constitutionality of § 20-26*

Petitioners object to (1) the restriction in § 20-26 that only one person per "religious society" may be authorized to perform marriages, and (2) to the requirement in § 20-26 that they post a $500 bond with surety. It is undisputed that no such restrictions are placed upon ordained ministers seeking approval under § 20-23.

Virginia Code § 20-26 states:

> Marriages between persons belonging to any religious society which has no ordained minister may be solemnized by the persons and in the manner prescribed by and practiced in any such society. One person chosen by the society shall be responsible for completing the certification of marriage in the same manner as a minister or other person authorized to perform marriages; such person chosen by the society for this purpose shall be required to execute a bond in the penalty of $500, with surety.

In contrast, § 20-23 states:

> When a minister of any religious denomination shall produce before the circuit court of any county or city in this Commonwealth, or before the judge of such court or before the clerk of such court at any time, proof of his ordination and of his being in regular communion with the religious society of which he is a reputed member, or proof that he is commissioned to pastoral ministry or holds a local minister's license and is serving as a regularly appointed pastor in his denomination, such court, or the judge thereof, or the clerk of such court

at any time, may make an order authorizing such minister to celebrate the rites of matrimony in this Commonwealth. Any order made under this section may be rescinded at any time by the court or by the judge thereof.

## A. *Legal Standards*

It is axiomatic that "all acts of the General Assembly are presumed to be constitutional." *Yamaha Motor Corp. v. Quillian*, 264 Va. 656, 665 (2002). A "party challenging an enactment has the burden of proving that the statute is unconstitutional, and every reasonable doubt regarding the constitutionality of a legislative enactment must be resolved in favor of its validity." *Marshall v. Northern Va. Transp. Auth.*, 275 Va. 419, 428 (2008). It is also well-established that courts must construe a statute "in such a manner as to avoid a constitutional question wherever this is possible," *Eaton v. Davis*, 176 Va. 330, 339 (1940), and narrowly construe statutes "where such a construction is reasonable and avoids a constitutional infirmity." *Virginia Soc'y for Human Life v. Caldwell*, 256 Va. 151, 157 (1998).

Both parties agree that the applicable legal standard is strict scrutiny as the rights involved are fundamental under the Constitution. Petitioners take a broad view of the constitutional issues at issue, arguing that, in this case, strict scrutiny is required under the Establishment Clause of the First Amendment to the United States Constitution, Article I, § 16, of the Constitution of Virginia, the Free Exercise Clause of the First Amendment to the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and Article I, § 11, of the Constitution of Virginia. See Pet. Br. 2-4. On the other hand, Respondent appears to limit the issue to constitutional protections afforded by the Free Exercise Clause, which "protect[s] religious observers against unequal treatment." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 542 (1993) (citing *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 148 (1987) (Stevens, J., concurring)).

In speaking of imposing burdens on fundamental rights, Justice Scalia wrote: "When the State makes a public benefit generally available, that benefit becomes part of the baseline against which burdens on religion are measured; and when the State withholds that benefit from some individuals solely on the basis of religion, it violates the Free Exercise Clause no less than if it had imposed a special tax." *Locke v. Davey*, 540 U.S. 712, 726-27 (2004) (Scalia, J., dissenting). Here, the public benefit allowing marriages to be solemnized by members of their chosen faith is made less available to members of religious groups without ordained ministers than to members of religions with ordained ministers. As in *Prince v. Massachusetts*, 321 U.S. 158, 170 (1944), the infringement on religious freedom claimed by

Petitioners is "but another phrasing" of an Equal Protection violation. By drawing a distinction between religions on the basis of whether they ordain ministers, this statutory scheme clearly implicates the Equal Protection Clause because it is a classification "drawn upon [the] inherently suspect distinction" of religion. See *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976); see also *Giarratano v. Johnson*, 521 F.3d 298, 303 (4th Cir. 2008). Accordingly, § 20-26 must pass the test of strict scrutiny, and thus there must be a compelling governmental interest and the statute must be narrowly tailored to further that interest for the statute to pass constitutional muster. See *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

There is a disagreement about whether the state's interest in passing § 20-26 is a compelling one. Petitioners do not concede that the government interest "in the contract between the parties who marry and in the proper memorializing of the entry into and execution of such a contract" is compelling. See Pet. Br. 5 (citing *Cramer*, 214 Va. at 565). However, "[m]arriage involves interests of basic importance in our society," *Boddie v. Connecticut*, 401 U.S. 371, 376 (1971), which gives the state broad authority to regulate both "marriage as an institution" and the proper memorializing of the entry into the marriage contract. See *Cramer*, 214 Va. at 565. The state's interest is undoubtedly a compelling one. This leaves the question of whether the provisions of § 20-26 requiring posting of a bond and allowing only one person per society to be designated to complete and file the requisite paperwork are each sufficiently narrowly tailored to serve the underlying governmental interests.

## B. *Requirement for a $500 Bond with Surety*

Petitioners and Respondent are in agreement that the requirement that individuals authorized under § 20-26 pay a $500 bond with surety is unconstitutional. Prior to 1981 and at the time that *Cramer* was decided, § 20-23 and § 20-26 both required such a bond. In light of the statutory changes in 1981, Respondent "declines to defend the constitutionality of this discrimination between religious sects for purposes of solemnizing marriages under the authority of the Commonwealth." Respondent Brief ("Resp. Br.") 2.

Before 1981, § 20-26 cited to § 20-23 for a description of the type of bond that was required. See Va. Code § 20-26 (1966) ("such person chosen by the society for this purpose shall be required to execute a bond under the provisions of § 20-23"); see also Va. Code § 20-23 (1966) (a judge may issue an order "authorizing such minister to celebrate the rites of matrimony in this State, upon the execution by such minister of a bond in the penalty of five hundred dollars, with surety. . . .").

The Court agrees with the parties that this bond requirement is clearly unconstitutional. The General Assembly cannot favor one type of religion over another without a compelling government interest and a narrowly

tailored method. See generally *Dukes*, 427 U.S. at 303. Section 20-26 impermissibly burdens Petitioners' religion when compared with celebrants from other religions who qualify under § 20-23, and thus it is not sufficiently tailored to the government's interest. The bond requirement will therefore not be required of Petitioners and Petitioners will be authorized to perform marriage ceremonies without it.

## C. *Requirement That One Person per Society Be Selected*

Petitioners assert that § 20-26 permits only one person per society to be authorized to officiate at a marriage. They argue that, because Dr. Ajaib Singh and Gurminder Singh Bhatti are both members of the Sikh Foundation of Virginia and Balbir Singh and Jagtar Singh Dhanoa are both members of Singh Sabha Gurdwara, at most one person from each temple can obtain court approval to perform weddings. Petitioners view this as an unconstitutional burden because, under their interpretation of the Code, if the one person who is authorized to complete the requisite paperwork is ill or out of town, no one can be lawfully married within the religious society. There is, in their view, "no good reason to prohibit organizations without ordained clergy from designating more than one person" to complete the certificate of marriage when other religions can have as many people designated as there are ordained ministers. Pet. Br. 6-7. To Petitioners, any person who is selected by their group and who is literate should be eligible for authorization. *Id.* at 5.

Respondent does not view this provision as causing unequal treatment between religions. As construed by Respondent, § 20-26 allows any number of persons to celebrate marriages in the manner prescribed by and practiced in each religious society. The one person requirement of § 20-26 simply means that only one person can be authorized to fill out the associated paperwork and return it to the court in accordance with Va. Code § 32.1-267(C). To Respondent, it is a rule that "plainly advances the Commonwealth's interest in providing a record of solemnization of a marriage." Resp. Br. 9. As a mere ministerial requirement, Respondent does not believe that this "discriminates as to the manner of solemnization" and is thus constitutional. *Id.*

Under the plain language of § 20-26, at most, one person from each of these temples could be authorized to "complet[e] the certification of marriage." This creates a regulatory structure for religions that ordain ministers under § 20-23 that is different from religions that do not ordain ministers under § 20-26, implicating the Equal Protection Clause.

Moreover, Respondent's interpretation of the statutory scheme does not address § 32.1-267(C), which requires that "[e]very person who *officiates* at a marriage ceremony shall certify to the facts of marriage and file the record in duplicate with the officer who issued the marriage license within five days after the ceremony." Va. Code § 32.1-267(C) (emphasis added). It is

clear from this statute that the person who officiates the marriage ceremony must be *the same* person who fills out the paperwork and returns it to the court.

*Webster's Third New International Dictionary*'s definition of "officiate" means "to perform a prescribed religious service or ceremony," such as to "officiate at a wedding." *Webster's New Int'l Dictionary* 1567 (3d ed. 2002). Thus, the person who officiates is the person performing the actual wedding ceremony. This necessarily burdens § 20-26 religious organizations without ordained ministers in a fundamental way that is not applicable to § 20-23 religions with ordained ministers.

Even if Respondent were correct in its interpretation of § 20-26, religious societies such as Sikh temples would still be burdened because only one person would have the legal capacity to report back to the court within five days as required by § 32.1-267(C). As Petitioners correctly indicate, "if the designated individual is ill or out of town, there is no one who is legally authorized to certify the marriage." Pet. Br. 7. As this burden is not placed upon other religions under § 20-23, it is discriminatory. Consequently, the Equal Protection Clause is clearly implicated and strict scrutiny must be applied.

Within the context of the one person requirement of § 20-26, especially in light of § 32.1-267(C), the compelling governmental interest is specifically "in providing a record of solemnization of a marriage." Res. Br. 9; see also *Cramer*, 214 Va. at 565 (recognizing that the state must confront "the necessity that the marriage contract itself be memorialized in writing and by a person of responsibility and integrity and by one possessed of some educational qualifications"). This leaves the issue of whether the one person per society requirement of § 20-26 is sufficiently narrowly tailored to serve that government interest.

In *Cramer*, the Court recognized that ministers, as a "profession, class, or group" are qualified to "execute the necessary forms required by the state, and report the contract of marriage between two people within the time prescribed." *Cramer*, 214 Va. at 565. In other words, the *Cramer* Court viewed the restriction in § 20-23 to ordained ministers as a shorthand for assessing an individual's ability to fill out and return the appropriate marriage certification paperwork in accordance with statutory requirements. Section 20-26 has no similar bright-line determination of ability and merely states that a person "chosen by the society" is allowed to complete the certification. The statute does not require that the chosen person have any capacity to complete the certification of marriage in a manner compliant with § 32.1-267(C). Section 20-26 in no way prevents an uneducated, illiterate, and irresponsible person from being tasked with the responsibility of completing and returning the marriage certificate. Without a closer relationship between the government's interest and the qualifications of the person completing the marriage certification, the one person requirement is

insufficiently narrowly tailored as required by the Equal Protection Clause. See generally *Adarand*, 515 U.S. at 227.

This Court finds that the one person per religious society requirement of § 20-26 unconstitutionally discriminates against Petitioners on the basis of their religion. Petitioners will all be authorized without any restriction as to the number of other authorized individuals from the same religious societies, provided that they are individuals "chosen by the society" who have demonstrated that they are capable of "completing the certification of marriage in the same manner as a minister or other person authorized to perform marriages." Va. Code § 20-26.

### Conclusion

For the reasons stated above, this Court concludes that Petitioners cannot be authorized to perform religious marriage ceremonies under § 20-23 because Sikhism does not have any type of ordained minister. However, this Court finds that the requirements of § 20-26 that only one individual from each religious society can be authorized to perform marriage ceremonies and that a $500 bond with surety must be provided are both unconstitutional because they discriminate on the basis of religion. Petitioners have provided adequate proof to the Court, through letters of recommendation, that they are members in good standing with their respective religious organizations, are appropriate individuals to perform wedding ceremonies in accordance with their religious practices, and are capable of completing the certification of marriages in the same manner as a minister.

Authorizing orders for each of the Petitioners accompany this opinion.